No. 15,370.

MALEY ET AL. *v.* MARTIN ET AL.
(144 P. [2d] 558)

Decided December 13, 1943.

Mr. Frank C. Myers, Mr. Gail L. Ireland, Attorney General, Mr. H. Lawrence Hinkley, Deputy, Mr. St. George Gordon, Assistant, for plaintiffs in error.

Messrs. Wood, Shuteran, Robinson & Harrington, for defendants in error.

*En Banc.*

Mr. Justice Bakke delivered the opinion of the court.

This is a workmen's compensation case, in which claimant, widow of a deceased employee, filed a claim for compensation with the Industrial Commission against the Ocean Accident and Guarantee Corporation, and Joe Martin for compensation benefits for the death of her husband, who lost his life by burning as a result of an automobile accident on May 18, 1942. The referee and the commission found in favor of claimant, holding "that decedent was injured in an accident arising out of and in the course of his employment." However, the district court vacated the award on the ground that deceased was a farm laborer within the statutory exception (section 287 (c), chapter 97, '35 C.S.A.). The question as to whether or not deceased was killed in an accident arising out of and in the course of his employment was included in the case before the commission and the trial court, but the parties have waived the point in their

presentations here. The only point urged by both sides is, Was decedent's work at the time of his death that of farm labor? Reference will be made to the parties as the claimant, the employee (Maley), and the employer (Martin).

The pertinent findings of the referee as approved by the commission were as follows:

"Lyle Maley was employed by the above named respondent employer on May 18, 1942 at an average weekly wage of $33.00. Said employer conducted a sand pit and also owned a farm. Decedent had been working for this employer since January, 1941. Decedent worked at the sand pit most of this time but on one occasion prior to May 18, 1942 the employer sent decedent to a farm which he owned for the purpose of removing a tractor to another farm owned by said employer. Decedent worked at the sand pit through May 14, 1942 and began working on a farm owned by said employer on May 15, 1942. It appears from the testimony that no others were working on this farm and that the employer had difficulty in obtaining help. The employer admits that the work on this farm was to be temporary and admits that the employment at the sand pit had not necessarily ceased.

"Respondents have cited many cases to the effect that where an employer conducts two businesses that are separate and distinct, one that is subject to the Act and the other being exempt from the Act, and where said employer carries insurance in the business that is subject to the Act, that this creates no liability for injuries sustained in the other business conducted by him which is not within the Act.

"The Referee agrees with the respondents' contention in this respect. If decedent was engaged in farm labor then this case would not be one compensable under the Colorado Compensation Act even though the employer also conducts a business that is subject to the Act. However, in this case decedent was merely working on this

farm temporarily and it cannot be stated that he was a farm worker at the time of the accident. The Referee, therefore, finds that any accident incurred by decedent, while working on the employer's farm, is covered by the Compensation Act."

The record discloses the following factual situation:

That the employer designated himself as a "general building contractor," and was engaged principally in the sand and gravel business, in connection with which he owned and operated a gravel pit on Cherry Creek near the point where it is crossed by Colorado Boulevard in southeast Denver, which business was covered by Workmen's Compensation insurance; that he also owned several houses and two farms; that he had not elected to have his farming operations covered by the Workmen's Compensation Act, and that it was while employed on one of these farms that the fatal accident occurred.

That about January 1, 1941, Maley was employed by Martin to operate a hoist at his sand and gravel pit; that he worked in that capacity regularly until May 14, 1942; that dissension had arisen between him and the foreman who had expressed a desire to discharge the employee; that because of this dissension and his desire for farm work, the employee had requested the employer to permit him to operate a tractor on one of employer's farms; that the employer agreed to this transfer, but stated that employee would have to "break someone in to run the hoist;" that employee did break in a new man who took over employee's work at the sand pit; that employee then went to work on the farm in Adams county on the morning of May 15th; that his duties, in part, consisted of operating or running a tractor—which tractor he had previously sold to the employer—in plowing the land on the farm; that in this connection he was required to obtain gasoline at a Denver filling station each evening to be used in the tractor the following day; that it was while he was on his way to the filling station in his own car on the evening of May 18th that he

lost his life in the fatal accident; that employee anticipated enlisting in the Air Corps and that he had had some necessary dental work done in this behalf.

At the hearing before the referee, the employer was asked whether "this work on the farm [was] to be temporary?", and he replied, "Not necessarily." Later, however, in answer to the referee's question, "His employment at the sand pit hadn't really been terminated, it was just a temporary termination?", he replied: "No. It could or it could not have been. In other words, he could have been employed. I could have taken him back to the sand pit but I had no intention of doing it." The employee was to receive compensation at the same rate on the farm job, although the employer kept a separate account for his farming operations. The employee was a farm laborer, having lived and worked on a farm in Nebraska, and on one occasion he laid off from the hoist job, at the request of the employer, long enough to drive a tractor from one farm to another.

We think the above is a fair statement of the evidence as it relates to the question of whether or not the employee was working as a farm laborer at the time of his death.

The specification of points urged for reversal are:

"I. The district court erred and exceeded its statutory authority and jurisdiction by failing to affirm the findings of fact, and award of the Industrial Commission because the findings of fact of the said Commission, upon which its award granting claimant's claim was based, is supported by competent evidence, and particularly the ultimate findings of fact that the employee was not a farm laborer and therefore did not come within the exceptions as enumerated in sections 288 (b) and 295, chapter 97 of the 1935 Colorado Statutes Annotated. II. The district court erred and exceeded its authority in finding that the evidence was undisputed; that decedent was a farm laborer."

It will be noted that the referee relied upon the

afore-mentioned testimony that cessation of work on the hoist job was not necessarily permanent, and that because of that fact the employee still had some hold on the hoist job, and, hence covered by employers' insurance. Farm labor ordinarily is not permanent. *Great Western Mushroom Co. v. Industrial Commission,* 103 Colo. 39, 82 P. (2d) 751. Such deduction by the referee and the commission is not justified in the face of the qualifications attendant upon the testimony. With the testimony undisputed that employee left the hoist job at his own request, fortified by the employment of a man to succeed him on that job, and employee's shown anticipation of early enlistment in the army, the inferences drawn by the referee clearly were not warranted. We think the language adopted by the referee, when placed in its proper setting in the record, is no evidence of employee's probable later return to the sand-pit job. We think therefore that this was not a case of conflicting evidence. Consequently, the trial court was not in error when it held that the employee was engaged in farm labor and that he had not been just temporarily transferred from his regular employment to work on the farm. The trial court did not find that the employee was "permanently working on the farm," as the attorney general urges, but held merely that he was a farm laborer within the meaning of the statute.

The law is well established that, "An employer may conduct different departments or types of business some of which are within the compensation act and some of which are not * * *." 71 C.J., p. 365. Generally, "The fact that an employer is engaged in an exempted occupation does not relieve him of liability for injuries sustained in another business or department conducted by him which is within the act; conversely, the fact that he is engaged in an occupation which is within the act creates no liability as to injuries sustained in another business or department conducted by him which is not within the act." 71 C.J., pp. 365, 366. "* * *

the manner in which an employee is paid is not necessarily a basis for the measurement of legal responsibility." *Paradis Case,* 127 Me. 252, 253, 142 Atl. 863, cited in note (c) 17, 71 C.J. 366.

Also persuasive in the affirmance of the judgment in this case is the case of *Ocean Accident & Guarantee Co. v. Industrial Commission,* 69 Utah 473, 256 Pac. 405. There, the employer owned a farm and operated a sand and gravel pit thereon. One of the employees (who had not worked on the gravel pit yet, so far as the opinion shows) was killed while making hay and even though the employer testified that he expected to put the employee to work on the gravel pit when he finished haying, the court held that at the time of employee's death he was a farm laborer, and hence not covered.

In the Idaho case—*Dorrell v. Norida Land & Timber Co.,* 53 Ida. 793, 27 P. (2d) 960—relied upon to support the award here, the fact appears that the employee, although working on the farm at the time he was killed, was specifically identified as covered by the insurance contract.

We cannot extend the rule of liberal construction to a case that is removed by the statute itself.

We think the trial court was right in setting aside the award of the commission in this case.

Judgment affirmed.

Mr. Justice Goudy not participating.