171 N.J. Super. 148 (1979)
408 A.2d 146
PAUL MINGIN AND XUAN MINGIN, HIS WIFE, PLAINTIFFS,
v.
CONTINENTAL CAN COMPANY, URBANA TOOL & DIE COMPANY, AND JOHN DOE, DEFENDANTS.
Superior Court of New Jersey, Law Division, Cumberland County.
Decided October 26, 1979.
*149 Mr. Darrell Fineman for plaintiffs (Messrs. Shapiro, Eisenstat, Capizola, O'Neill and Gabage, attorneys).
Mr. James A. Mullen for defendant Continental Can Company (Messrs. Montano, Summer, Mullen & Manuel, attorneys).
MILLER, J.S.C.
This is a motion for summary judgment bottomed upon the theory that defendant is immune from suit under the Worker's Compensation Act, N.J.S.A. 34:15-8. The facts are as follows:
Plaintiff, in the scope of his employment at Crest Container Corp., was injured while operating a machine manufactured by the Urbana Tool & Dye Co. He received workers' compensation benefits from Crest's insurance carrier and thereafter brought this action against Urbana Tool & Dye Co. and Continental Can Company.
Both Crest and Urbana are wholly owned subsidiaries of Continental and both are covered under the same policy of *150 worker's compensation insurance issued by Kemper Insurance Company, the same being a national policy covering all of Continental's operations and subsidiaries.
The argument, obviously, is that the operation of Continental must be treated as one amalgamated unit and no recovery beyond worker's compensation benefits may be obtained. Taylor v. Pfaudler Sybron Corp., 150 N.J. Super. 48 (App.Div. 1977); Seltzer v. Isaacson, 147 N.J. Super. 308, 315 (App.Div. 1977).
While it is clear that in the situations presented in the cited cases no common law action would lie, those cases do not present the instant situation. Continental is a large public corporation. The policy in question covers 37 states, the annual premium of which is $5,317,054. The same policy lists, in addition to the 37 states of Continental Can's orbit, 17 other subdivisions in 6 additional states. On April 27, 1976, the policy was amended to show the named insured as "The Continental Group."
Continental argues that since all of the stock of the Crest is owned by Continental and that since all members of its board of directors are employees of Continental together with the insurance coverage as set forth above, since unity is created between Crest and Continental, a common law action in this case must be denied.
In the cases wherein this has been raised elsewhere the holdings have not supported this premise as a matter of law.
In Boggs v. Blue Diamond Coal Co., 590 F.2d 655 (1979), the Sixth Circuit pointed out:
Workmen's compensation laws were passed before the multi-unit enterprise became the norm in the American economy and before the accompanying managerial revolution in American business ... For this reason, state workmen's compensation laws ... do not address the question of a parent corporation's immunity from common law tort liability for injuries to its subsidiary's employers.
The court concluded that such liability exists.
*151 In Williams v. McAllister Bros., Inc., 534 F.2d 19 (1976), the Second Circuit declined to consider a parent corporation of a subsidiary employer as an employer against whom a common law action might lie.
In Latham v. Technar, Inc., 390 F. Supp. 1031 (E.D.Tenn. 1974), the District Court pointed out:
Although the stock ownership of one corporation by another may serve in certain instances as an indicia of identity of commixture as between the two, for the purpose of determining who may maintain a common law action against a third party, it is not conclusive. Likewise, the presence of a common insurer as between the holding company and the wholly owned subsidiary does not automatically establish a single employer unit, nor does identity of management create identity for workmen's compensation purposes. [at 1037]
To the same effect are Thomas v. Hycon, Inc., 244 F. Supp. 151 (D.C. 1965), and Thomas v. Maigo Corp., 37 A.D.2d 754, 323 N.Y.S.2d 106 (App.Div. 1971).
Refer also, to 2A Larson's Workmen's Compensation Law, supplement to page 14-46.
To adopt Continental's theories on a general basis would be to ignore the development of modern business conglomerates. Merely to reflect upon the facts presented delineates the scope of the problem. To apply the principles advanced to such organizations as this organization or General Motors or Trans-America or International Telephone and Telegraph, all of which own businesses not only national but multi-national in scope and as diversified as the ability of the conglomerate to acquire new businesses, dramatizes the perilous seas upon which the court is invited to embark. The proposition advanced would thus be to deny the products liability field to a significant percentage of our population. This drastic result ought not to be mandated except by the Legislature.
The temptation to disregard the corporate form and to "pierce the corporate veil" has become much greater since the General Corporation Act was amended to permit the sole ownership *152 of all the capital stock of the corporation by one person, L. 1968, c. 263, now N.J.S.A. 14A:2-6. The statute now permits one person to function as a corporation sole places upon the court the duty to realize that this procedure is lawful and that the corporate form may not be disregarded except in the case of actual fraud. Frank v. Frank's, Inc., 9 N.J. 218 (1952); Yacker v. Weiner, 109 N.J. Super. 351, 356 (Ch.Div. 1970), aff'd. 114 N.J. Super. 526 (App.Div. 1971). The court may not bastardize by construction that which the Legislature has legitimized by statute.
While it is obvious that there may be situations where a merger in law or in fact would preclude a common law action, Taylor v. Pfaudler Sybron Corp., supra; it is equally obvious that the facts in this case by no means present such a situation. Plaintiff has the right to bring this action. Summary judgment is denied.