Audrey CHOATE and Jack
Choate, Plaintiffs,

v.

LANDIS TOOL COMPANY, a division of
Litton Industrial Products, Inc., a corpo-
ration, and Wyman-Gordon Company, a
corporation, Defendants.

Civ. No. 77–72946.

United States District Court,
E. D. Michigan, S. D.

March 21, 1980.

Nicholas J. Rine, Kelman, Loria, Down-
ing, Schneider & Simpson, Detroit, Mich.,
for plaintiffs.

Mark Shreve, Daniel L. Garan, Garan, Lucow, Miller, Seward, Cooper & Becker, Detroit, Mich., for defendants.

## OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

### I.

COHN, District Judge.

Before the Court is defendant Wyman-Gordon Company's (Wyman-Gordon) motion for summary judgment, claiming that its relationship with Jackson Crankshaft Company (Jackson), an almost wholly owned subsidiary, puts it under Jackson's immunity from suit as provided in § 131 of Michigan's Workers' Disability Compensation Act of 1969, M.C.L.A. § 418.101 *et seq.* (the Act).[1] Plaintiff, Audrey Choate, and her husband claim separate acts of negligence by defendants Landis Tool Company and Wyman-Gordon for injuries sustained by plaintiff during the course of her employment at Jackson.[2]

■ Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56. The burden is on Wyman-Gordon to establish the absence of a genuine issue, while plaintiff has the opportunity to set forth specific facts showing that there is a genuine issue for trial. *Smith v. Hudson*, 600 F.2d 60 (6th Cir. 1979). When evidence is incomplete or disputed, the matter should not be disposed of summarily, but instead should be left for determination by the trier of fact. However, where only an application of legal principles to undisputed facts gives rise to a question of law it may be decided by the court. *Sove v. Smith*, 355 F.2d 264 (6th Cir. 1966).

Here there is no dispute as to the underlying facts. The only issue for determination concerns the status of Wyman-Gordon either as an employer, immune from suit under § 131 of the Act, or as a third party,

subject to suit under § 827. Based on the record before the Court, it finds that Wyman-Gordon is not plaintiff's employer and therefore the motion for summary judgment is denied.

### II.

■ We start with the principle that in Michigan separate corporate entities will be respected, *Belen v. Dawson*, 52 Mich.App. 670, 217 N.W.2d 910 (1974), unless they are employed as mere conduits or for purposes of fraud, *U. S. v. Certain Parcel of Land, Wayne Cty., Mich.*, 466 F.2d 1295 (6th Cir. 1972). This of course means that, in general, even though Wyman-Gordon is the parent company of Jackson their separate existence will be respected.

In *Boggs v. Blue Diamond Coal Company*, 590 F.2d 655 (6th Cir. 1979), the Sixth Circuit, in a well reasoned opinion by Judge Gilbert Merritt, applied this principle of respect when, a majority held that under Kentucky law coal miners working for a subsidiary could sue the parent for claimed acts of negligence of the parent. Judge Merritt explained that a sound approach to the question of a parent corporation's immunity requires an examination of the history and purpose underlying workers' compensation laws.

"The dominant purpose of the movement to adopt workmen's compensation laws in the early decades of this century was *not* to abrogate existing common law remedies for the protection of workmen. It was to provide social insurance to compensate victims of industrial accidents because it was widely believed that the limited rights of recovery available under the common law at the turn of the century were inadequate to protect them." (Emphasis in original).

590 F.2d 655, 658.

He then pointed out that since the adoption of workers' compensation laws,

---

**1.** Citations are to sections of the Act.

**2.** Plaintiff has presumably filed a claim for workers' compensation benefits and presuma-

bly Jackson alone is the respondent. Her right to sue third parties is preserved by § 827 of the Act.

common law tort principles limiting liability have been gradually modified while the scope of liability has been expanded. Likewise, he said that in this area courts have responded by liberally construing immunity provisions.

Judge Merritt went on to quote from Professor Larson (2A Larson, *The Law of Workmen's Compensation* ¶ 72.50 at 14–95 (1976)).

" '(T)here is no strong reason of compensation policy for destroying common law rights . . . (and) *every presumption should be on the side of preserving those rights,* once basic compensation protection has been assured . . ' The injured employee has a right to be made whole—not just partly whole . . . (A)ll the reasons for making the wrongdoer bear the costs of his wrongdoings still apply, including the moral rightness of this result as well as the salutary effect it tends to have as an incentive to careful control and safe work practices.' " (Emphasis in original).

590 F.2d 655, 660.

Lastly, Judge Merritt suggested that in the absence of any compelling statutory language or social policy justification, common law rights of recovery should be preserved when possible. 590 F.2d 655, 660.

In holding that the parent in *Boggs* could not avoid the corporate structure involved in order to claim immunity from liability under Kentucky's workers' compensation law, Judge Merritt concluded that separate corporate entities are to be disregarded only when the structure is used to "defraud creditors, create a monopoly, circumvent a statute or for other similar reasons." 590 F.2d 655, 662.

"The owners may take advantage of the benefits of dividing the business into separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee." *Id.*

Nothing has been presented which suggests that Michigan law is in any significant way different than Kentucky law or that the relationship between Wyman-Gordon and Jackson is any different than the relationship between Blue Diamond and its subsidiary. There is nothing in the record to even remotely suggest that the separate corporate identities of Wyman-Gordon and Jackson should be disregarded as a consequence of fraud, abuse of corporate privilege, or an attempt to circumvent a statute or frustrate public policy.

### III.

Wyman-Gordon argues that its status as plaintiff's employer is clearly dictated by the economic reality test which Michigan courts now use in determining employer-employee relationships in workers' compensation matters. This test first surfaced in the dissenting opinion in *Powell v. Employment Security Commission*, 345 Mich. 455, 462, 75 N.W.2d 874 (1956). Justice Talbot Smith, objecting to the majority's finding that women engaged by a photography studio for the purpose of retouching negatives in their homes were independent contractors, said:

"The test employed is one of economic reality. It looks at the task performed, whether or not it is a part of a larger common task, 'a contribution to the accomplishment of a common objective'. . . . The test, . . ., looks at the workmen, to see whether or not their work can be characterized 'as a part of the integrated unit of production,' . . and whether 'the work done, in its essence, follows the usual path of an employee.' "

345 Mich. at 455, 478–79, 75 N.W.2d at 886.

The economic reality test to determine an employment relationship for the purpose of deciding entitlement to benefits was subsequently adopted by the Michigan Supreme Court in *Tata v. Muskovitz*, 354 Mich. 695, 94 N.W.2d 71 (1959), laying to rest the "control test" that Justice Smith found so repugnant.[3] The economic reality test has

---

**3.** The control test is the traditional common law test used in determining master-servant

relationships. The element of control is considered as the primary factor in delineating the

since been used on numerous occasions and has come to require the consideration of several factors when evaluating an employment relationship for purposes of determining entitlement. These include the control of a worker's duties; the payment of wages; the right to hire, fire or discipline; and the performance of duties as an integral part of the employer's business toward the accomplishment of a common goal. *Askew v. Macomber*, 398 Mich. 212, 247 N.W.2d 288 (1976). The test concerns itself with the realities of the work performed and requires that the described elements be viewed as a whole, assigning primacy to no single one. *Schulte v. American Box Board Co.*, 358 Mich. 21, 99 N.W.2d 367 (1959).

## IV.

In support of its claim to immunity Wyman-Gordon asserts that:

1) Wyman-Gordon owns all but 12 of Jackson's 195,000 outstanding shares of stock.

2) An interlocking directorate and management exists between Wyman-Gordon and Jackson.

3) Jackson's 1975 UAW contract was signed by Wyman-Gordon personnel thereby placing the responsibility of workers' duties, and hiring and firing with Wyman-Gordon.

4) The Wyman-Gordon logo is a recognized part of Jackson's name since it appears on the cover of the union contract as well as on plaintiff's paycheck.

5) Wyman-Gordon purchased an insurance policy in 1975 from Liberty Mutual Insurance Company covering liability and workmen's compensation insurance for all of its subsidiaries, including Jackson.

In light of these inter-relationships, Wyman-Gordon argues that the economic realities of this situation clearly show that Wyman-Gordon is plaintiff's employer.

In reaching this conclusion Wyman-Gordon relies on several Michigan cases in which it claims there runs a "common thread" regarding "control of the subsidiary operations and most importantly a single insurance coverage of all operations" as the key factors to examine when determining common employment between the parent and subsidiary.[4] These cases by and large deal with claims for compensation by an injured worker and, in keeping with the liberal construction afforded workers' compensation laws, i. e., expand coverage and narrow liability, *Boggs v. Blue Diamond Coal Co., supra*, illustrate an almost uniform construction favorable to the workers' circumstances. Where the holding is against the worker the decision is almost invariably premised on the inability of the court to bring the worker within the statutory scheme of benefits or a clear statutory prohibition on the worker's position.

In *Hudson v. Allen*, 11 Mich.App. 511, 161 N.W.2d 596 (1968), defendant a sole proprietor of two businesses, was sued by plaintiff, an employee at one of the businesses, for injuries she sustained at the second business. Plaintiff had applied for and received workers' compensation benefits when she sought to recover from defendant as "some person other than . . . the employer" as provided in § 827 of the Act. Plaintiff claimed that defendant was a "legal personality separate and distinct" in each of his businesses and could therefore be subject to a third-party tortfeasor action for damages. *Id.* at 514, 161 N.W.2d 596. Evidence showed that all business records, all tax liability and an insurance policy were shared by both businesses, leading the Court of Appeals to conclude the defendant's businesses were not set up as independent legal entities. "The two operations realistically represent a single unit with a

scope of a master's liability under the doctrine of *respondeat superior*. *Nichol v. Billot*, 406 Mich. 284, 279 N.W.2d 761 (1979). In *Powell, supra*, Justice Talbot Smith observed that the control test was used by Michigan courts as a "universal solvent" and as such was an inadequate standard because of the ambiguity of its

meaning which rendered inconsistent results. 345 Mich. at 466, 471–72, 75 N.W.2d 874.

4. Memorandum of Law in Support of Defendant's Motion for Summary Judgment, at 12. (Filed July 12, 1979).

single employer, and we do not find a dual legal personality in the defendant Austin H. Allen under these circumstances." 11 Mich. App. 511, 518, 161 N.W.2d 596, 599. The Court of Appeals therefore held plaintiff's exclusive remedy was through workers' compensation and precluded her tortfeasor action against defendant.

*Renfroe v. Higgins Mfg. Co., Inc.,* 17 Mich.App. 259, 169 N.W.2d 326 (1969), involved a similar situation. Plaintiff was injured at defendant's business and was present there only by virtue of his placement by a labor broker. Plaintiff received workers' compensation benefits from the third-party defendant labor broker, and subsequently sought additional recovery from defendant Higgins as a third-party tortfeasor. Plaintiff argued that based on the facts, defendant should not be labeled an "employer" within the meaning of the workers' compensation law. The Court of Appeals analyzed the economic realities of the relationship and was persuaded by the fact that Higgins could and did direct plaintiff's activities in its factory and that all payments made to plaintiff incident to his employment came from the fee which Higgins paid the labor broker. The Court of Appeals concluded that both the labor broker and Higgins were employers of plaintiff, each in a different way. Therefore, it held plaintiff's workers' compensation recovery precluded his suit against Higgins as a tortfeasor.

In *Nichol v. Billot,* 406 Mich. 284, 279 N.W.2d 761 (1979), plaintiff's husband was hired by the owner of a trailer park to assist in the expansion of a sewer line.

Defendant, an excavation contractor, was also hired to excavate a trench on the premises. Plaintiff's husband was killed when the trench defendant excavated collapsed on him. Plaintiff received workers' compensation benefits from the owner of the park and sought additional recovery from defendant as a third-party tortfeasor. Defendant claimed that plaintiff could not sue him under § 827 of the Act because, while he was an independent contractor for general purposes, enough control was exercised over him by the owner of the trailer park that he became the deceased's co-employee and was therefore immune from suit. In applying the economic reality test, the Michigan Supreme Court found defendant to be an independent contractor and permitted plaintiff recovery in tort.

In *McKissic v. Bodine,* 42 Mich.App. 203, 201 N.W.2d 333 (1972), plaintiff sought workers' compensation benefits as a result of an injury he sustained while working at one of defendant's rental properties. The Workers' Compensation Appeal Board refused plaintiff coverage. The Court of Appeals affirmed stating that, as an independent contractor, plaintiff was not covered by the Act and therefore was not entitled to benefits. In evaluating plaintiff's status, the Court of Appeals rejected any analysis that centered on the question of control and reiterated its acceptance of the economic reality test for determining employment relationships. It then reviewed the history of the test and the cases supporting it,[5] and found that since plaintiff held himself out as a part-time handyman, provided his own tools and materials, worked only when he .

---

5. The Court of Appeals determined from the cases that there were eight factors to consider when determining the nature of an employment relationship. 42 Mich.App. 203, 208–09, 201 N.W.2d 333, 335–36.

  1) What liability does the employer incur in the event of the termination of the relationship at will?

  2) Is the work being performed an integral part of the employer's business which contributes to the accomplishment of a common objective?

  3) Is the job such that the employee depends on the emolument for the payment of his living expenses?

  4) Does the employee furnish his own equipment and materials?

  5) Does the person seeking employment hold himself out as one ready and able to perform tasks of a given nature?

  6) Is the work in question normally performed by an independent contractor?

  7) Control along with payment of wages, maintenance of discipline and the right to hire and fire should also be considered.

  8) Weight should be given to those factors which will most favorably effectuate the objectives of the statute.

was available, contracted each job for a given price, and performed such work incident to his full-time employment in a factory where he was covered by the Worker's Compensation Act, he was an independent contractor and not defendant's employee under the Act. Plaintiff, therefore, was prevented from collecting workers' compensation benefits because he was not an employee within the meaning of the Act.

The plaintiff in *Askew v. Macomber*, 398 Mich. 212, 247 N.W.2d 288 (1976), was hired pursuant to any agency agreement with a bank to care for defendant, and subsequently sought workers' compensation benefits from defendant and the bank when she was injured in the course of her employment. Plaintiff claimed that both the bank and the defendant were her employers under the Act. The Michigan Supreme Court, however, held that defendant was plaintiff's sole employer and the only one liable to her for benefits. Applying the economic reality test, the Supreme Court found that the bank was not plaintiff's employer in light of the fact that it took no role in the day-to-day supervision of plaintiff's activities, bank funds were not used to pay plaintiff, the work of caring for elderly people was not an integral part of the bank's business, and the bank was not acting as a labor broker, but in accordance with an agency agreement with defendant. The Supreme Court explained that the bank's actions on behalf of defendant were "those of an agent on behalf of a principal", 398 Mich. 212, 221, 247 N.W.2d 288, 291, thereby relieving the bank of any liability and limiting plaintiff's recovery to benefits provided for by defendant.

A similar situation arose in *Smith v. Martindale*, 81 Mich.App. 682, 266 N.W.2d 49 (1978). Plaintiff, employed by a steel company, was injured in the course of his employment as a consequence of the claimed negligence of defendant, a crane operator whose services and crane were rented by plaintiff's employer from an erector company. Plaintiff received workers' compensation benefits from his employer and subsequently commenced a third-party action against the defendant crane operator. The erector company sought to foreclose plaintiff's action by claiming that defendant was an employee of the steel company making plaintiff's exclusive remedy through his employer's workers' compensation. Applying the economic reality test and using the factors enumerated in *Askew v. Macomber, supra,* to determine an employment relationship, the Court of Appeals concluded that defendant was not controlled by the steel company, did not receive any money from the steel company, and could not be fired or disciplined by it. Defendant's employment was subject to the dictates of the erector company, thereby making defendant its employee and not the steel company's. Defendant then, was subject to suit by plaintiff as a tortfeasor.

To demonstrate the outer limits the courts will reach in considering employment relationships, Wyman-Gordon cites *Higgins v. Monroe Evening News*, 404 Mich. 1, 272 N.W.2d 537 (1978). There, plaintiff, a 5 year old boy, was injured when accompanying an older friend on a paper route that the friend was temporarily running for the route's owner. In suing defendant, for workers' compensation benefits, plaintiff claimed that an employment relationship existed by virtue of the fact that plaintiff was acting under a contract of hire with his friend. The Michigan Supreme Court held that no employment relationship existed between plaintiff and defendant. It based its decision not on the economic realities of the situation, but on the absence of a contract to hire as viewed according to the principles of contract law. The Michigan Supreme Court, in determining that such a contract did not exist, found that the relationship between plaintiff and his friend was merely a social one and could not be viewed as coming within the legislative intent of the Worker's Compensation Act. Without a contract of hire plaintiff could not be classified as defendant's employee within § 161 of the Act:

(1) An *employee* as used in this act shall mean:

(b) Every person in the service of another, under any contract of hire,

express or implied . . . § 161(1)(b).

## V.

█ Wyman-Gordon's emphasis on the claim that it purchased the insurance policy securing plaintiff's compensation benefits from Jackson after her injuries, is misplaced. While it is true that Wyman-Gordon and Jackson are covered by the same workers' compensation policy, it is also clear that under the policy Jackson is designated as a separate named insured.[6] Jackson may even have contributed its proportionate share of the premiums on the policy. There is nothing before the Court, however, to indicate how such premiums were computed, paid for or accounted for among the named insureds.

The record before the Court tends to show an effort to maintain separate identities between Wyman-Gordon and Jackson rather than merge them. Their tax liabilities are kept separate; plaintiff's W–2 form lists Jackson as the employer; loans are accounted for separately; Jackson is a Michigan Corporation and files a Michigan Annual Report with the Department of Commerce; Wyman-Gordon is not authorized to do business in Michigan; and the labor agreement, although signed by some official of Wyman-Gordon, is with Jackson. There is no evidence that accounts of the two companies are commingled or that they are run as a single entity.

Moreover, if Wyman-Gordon was in fact plaintiff's employer then, subject to the penalties provided in §§ 641 and 647 of the Act, it would have had to secure the payment of compensation for plaintiff under § 611; report under § 615, at the request of the director of the Workers' Compensation Bureau, the number of its employees (including plaintiff), the nature of their work and the name of the workers' compensation insurer; and provide coverage ". . . in

one and the same insurance policy, all the businesses, employees, enterprises and activities of the employer" under § 621. Wyman-Gordon's insurer, Liberty Mutual, would also be required to file a notice with the director pursuant to § 625, of the issuance of the policy covering plaintiff and its effective date. There is nothing in the record to indicate that any of these things were done. Likewise, there is no evidence that Wyman-Gordon complied with Administrative Rule 1 (requiring an employer to immediately report to the Bureau of Workmen's Compensation all injuries arising out of and in the course of employment), or Rule 11 (requiring notice of issuance of a workers' disability compensation insurance policy to be sent to the Bureau).

## VI.

The Michigan Court of Appeals was presented with a similar fact situation in *Elliott v. Smith*, 47 Mich.App. 236, 209 N.W.2d 425 (1973), where, however, the result was more egregious than exists here. The Court of Appeals, in interpreting what is now § 621 of the Act,[7] held that an individual and his two wholly owned corporations were not one employer under circumstances where one corporation possessed insurance coverage, the other did not and an injured employee of the uninsured corporation tried to obtain benefits by arguing that there was one large enterprise involved. The Court of Appeals reasoned that the corporations were separate and distinct legal entities despite their ownership by one individual. Quoting from *Gottlieb v. Arrow Door Co.*, 364 Mich. 450, 452, 110 N.W.2d 767, 768 (1961) the Court of Appeals said,

"There is . . . no requirement in Michigan law today that for valid corporate existence there must be a specified, or a minimum, number of stockholders.

---

6. In a general amendatory endorsement to the policy all of Wyman-Gordon's subsidiaries, including any business entity in which Wyman-Gordon owns more than 50%, are listed under the heading "named insured."

7. ". . . every insurer . . . shall insure, cover and protect in one . . . policy all businesses, employees, enterprises, and activities of the employer." M.C.L. § 418.621; M.S.A. § 17.237.

Nor do we find allegations or proofs of fraud, sham, or other improper use of the corporate form justifying our 'piercing the veil' of corporate existence. The one-man corporation . . . is no stranger to the law. That a corporation is under the domination of a principle stockholder who may be entitled to all of its profits violates no requirement of our statute law, is not opposed to public policy, and constitutes no fraud on creditors."

## VII.

Wyman-Gordon asks to be classified as plaintiff's employer to gain immunity from suit. Denial of its claim serves the important public interest of implementing the policy consideration behind the law of torts, i. e., compensating victims as well as encouraging the use of responsible safeguards against risks of injury *Funk v. General Motors*, 392 Mich. 91, 220 N.W.2d 641 (1974).

MOTION DENIED.

SO ORDERED.