Eldor PETERSON and Elaine Peterson, Plaintiffs,

v.

TRAILWAYS, INC., Defendant.

Civ. A. No. 82–JM–291.

United States District Court, D. Colorado.

Jan. 24, 1983.

John Perrott, Johnstown, Colo., Warren L. Taylor, Loveland, Colo., for plaintiffs.

J. Bayard Young, Montgomery, Little, Young, Campbell & McGrew, Englewood, Colo., Albert E. Zarlengo, Jr., Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

JOHN P. MOORE, District Judge.

■ This matter comes before the Court upon Defendant's Motion for Summary Judgment. This motion is grounded upon the proposition, novel to Colorado law, that the immunity from liability in tort granted employers under the Colorado Workmen's Compensation Act[1] (WCA) extends to a parent corporation sued by an employee of its wholly-owned subsidiary. I disagree, and, accordingly, conclude that the motion should be denied.

The finality inherent in summary judgment requires that the court be convinced beyond a reasonable doubt that there exists no genuine issue of material fact. *Norton v. Liddel,* 620 F.2d 1375 (10th Cir.1980); *Becker v. Marketing and Research Consultants, Inc.,* 526 F.Supp. 166 (D.Colo.1981). Consequently, pleadings, affidavits and other matters of record must be construed in favor of the party against whom the motion is made. *Otteson v. United States,* 622 F.2d 516 (10th Cir.1980); *Becker, supra.* So considered, the facts of this matter appear as follows.

Defendant Trailways, Inc., (Trailways) is a resident of Texas engaged in the business of intrastate and interstate busing. A portion of its equipment is serviced at a garage located in the City and County of Denver, Colorado. The garage property is owned by Four States Realty Co., Inc., (Four States) and leased to Denver-Colorado Springs-Pueblo Motorways, Inc., (DCSP), the operating company. Four States is a wholly-owned subsidiary of America Bus Lines, Inc., which, in turn, is wholly owned by Trailways. DCSP is a Colorado corporation wholly owned by Trailways.

In keeping with this close ownership relation, Trailways and DCSP follow a close organizational and working relationship. Thus, all the officers of DCSP are employees of Trailways; most of these persons are also officers of Trailways. Account and payroll records of the corporations are kept "at the same location 'by the same personnel and are consolidated for income tax purposes."[2] Moreover, both corporations are insured for purposes of workmen's compensation under a single policy with Liberty Mutual Insurance Company. While DCSP and Trailways "have common supervision as to policies and procedures,"[3] Trailways exercises ultimate control over operations through its vice president of maintenance.[4] This authority naturally includes the right to hire and fire "and to make policies to see procedures are followed by the management and personnel"[5] of DCSP. It is asserted by the Plaintiffs and (at least by implication) conceded by the Defendant that Trailways is responsible for security at the garage facility.

Albeit close, the relationship between DCSP and Trailways does not appear to have been one of functional identity. As noted, DCSP management has more than nominal responsibility for garage operations. Moreover, there is no indication that the records of the corporations are consolidated for purposes other than income taxation or that DCSP does not pay its share of the premiums due Liberty Mutual for Workmen's Compensation coverage. On the other hand, it is admitted that DCSP

---

1. Section 8–40–101 et seq. C.R.S. 1973 (as supplemented).

2. Affidavit of R.W. Mayfield, Secretary of Trailways, Inc., and Denver-Colorado Springs-Pueblo Motorways, Inc. (Mayfield affidavit at 15.)

3. Mayfield affidavit at 15.

4. The Vice President and his immediate subordinates are officed in Dallas, Texas. Orders are transmitted to a garage foreman in Denver who, along with a garage supervisor, is responsible for on-site operations. The salaries of foreman and supervisor are paid by DCSP.

5. Mayfield affidavit at 16.

maintains a payroll account for garage personnel[6] and is initially responsible for the costs of garage operations.[7] Thus, in the words of R.W. Mayfield, secretary of Trailways and DCSP, "[t]he companies are separate corporations." Mayfield affidavit at 6.

In his complaint and supporting affidavit, Mr. Peterson states that he was employed by DCSP as a maintenance supervisor assigned to the night shift at the Denver garage. On numerous occasions prior to the events complained of, he and other members of the night shift experienced problems with thieves and other assailants who at times carried exposed weapons. As a result, Peterson consistently requested that measures be taken to upgrade security. In particular, he urged the installation of locks and the reinstatement of a formal guard service which had been terminated by Trailways in the Spring of 1980. Peterson's immediate superior concurred in these requests and forwarded them to Trailways. Trailways refused to take action.

During the early morning hours of August 6, 1980, Mr. Peterson was assaulted and severely injured by an unknown assailant while engaged in his employment as night shift supervisor. Naming DCSP as his employer, Peterson filed a claim for workmen's compensation benefits and received an award paid under the policy insuring DCSP and Trailways. The complaint in this action was filed on February 22, 1982, and, as amended, alleges that Trailways is answerable to Peterson and his spouse in compensatory and punitive damages for the described acts and omissions which are variously claimed to have been negligent, reckless, and "based upon a deliberate and subjective realization of the risk of bodily injury to the Plaintiff."[8]

Colo.Rev.Stat. § 8–42–102 (1973, 1980 Supp.) of the Colorado WCA provides that:

An employer who has complied with the provisions of articles 40 to 54 of this title, ... shall not be subject to ... any other liability for the death of or personal injury to any employee, except as provided in said articles; and all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of such death of or personal injury to any such employee and accruing to any person

6. The "facts" appearing of record allow for a good deal of conjecture regarding the origin of this account and its relation to the instant matter. According to G.K. Hussong, vice president of maintenance and engineering for Trailways, the DCSP payroll has been in existence "since August 6, 1980." (Hussong affidavit at 1.) Mr. Peterson's injuries were sustained on the same day. (Peterson affidavit at 2.) The Defendant has submitted a copy of a check dated July 31, 1980, and naming Eldor Peterson as payee. The check is drawn upon a "payroll account" and signed by L.J. McCabe, the treasurer of DCSP. (See copy of 1980 Annual Report filed with the Colorado Utilities Commission attached to Plaintiffs' Brief in Opposition.) Printed at the top of the check is the name "Trailways, Inc." Directly opposite the words "payroll account" appears the name "Denver-Colo Spgs-Pueblo Mot." Defendant argues that this "exhibit" shows Mr. Peterson's payroll checks were "issued" by Trailways. In my opinion, the information evinced by the copy is far too ambiguous to impart any certainty to this conclusion. Moreover, even if Trailways issued the checks, it does not follow that they were drawn upon a Trailways account. Since Hussong's statement that the DCSP payroll has existed "since" August 6, 1980, does not clearly negate the possibility of its earlier existence, I am unable to conclude for purposes of this motion that Mr. Peterson's salary was paid by Trailways at the time in question.

7. These costs are "charged back" to Trailways and its subsidiaries based upon use.

8. The Petersons argue in the alternative that if Trailways is entitled to immunity under the Colorado WCA, the instant action is not foreclosed, since the bar of workmen's compensation does not extend to intentional wrongdoing. Trailways opposes this conclusion, citing *Kandt v. E.B. Evans,* Colo., 645 P.2d 1300 (1982). Because I conclude that there exist questions of material fact concerning Trailways' "employer" status, I do not reach the issue. It bears mention, however, that the *Kandt* court appears to have been concerned with intentional wrongdoing solely as it relates to the immunity of co-employees and the liability of employers under the doctrine of *respondeat superior.* The court noted in passing that "some justification exists for not interpreting the exclusivity provisions to bar intentional tort actions where it is the employer personally, or someone who is the alter ego of the employer, who commits the tort ...." *Kandt, supra,* at 1304.

are abolished except as provided in said articles.

The Act defines "employer" as:

[A] person, association of persons, firm, and private corporation, including any public service corporation, personal representative, assignee, trustee, or receiver, who has one or more persons engaged in the same business or employment, ... in service under any contract of hire, express or implied.

Colo.Rev.Stat. § 8–41–105(1)(b) (1973, 1980 Supp.).

An "employee" is:

[A] person in the service of any person, association of persons, firm, or private corporation, including any public service corporation, personal representative, assignee, trustee, or receiver, under any contract of hire, express or implied.... § 8–41–106(1)(b) C.R.S. 1973.

Colo.Rev.Stat. § 8–41–106(1)(b) (1973).

■ The obvious import of these provisions is that the bar of workmen's compensation is derived in the first instance from an employment relation premised upon a "contract of hire". See generally 1C Larson's Workmen's Compensation Law, § 47 at 8–231 (1980 Ed.). Although liberal interpretation of the WCA counsels against strict application of "each and every formality attending commercial contractual relationships, ..." [9] the Colorado courts have consistently ruled that "[a] contract for hire is subject to the same rules as other contracts...." Denver Truck Exchange v. Perryman, 134 Colo. 586, 307 P.2d 805, 810 (1957); see also Hall v. State Compensation Insurance Fund, 154 Colo. 47, 387 P.2d 899 (1963). Where no such contract exists in fact or by operation of law,[10] and the parties are not "in the same employ," [11] the

exclusive remedy rule is without effect. See, e.g., Frohlick Crane Service, Inc. v. Mack, 182 Colo. 34, 510 P.2d 891 (1973).

■ As stated in Denver Truck Exchange, supra, 307 P.2d at 810: "A contract is an agreement which creates an obligation. Its essentials are competent parties, subject matter, a legal consideration, mutuality of agreement, and mutuality of obligation." The instant record is plainly lacking in facts from which it may be inferred as a matter of law that the parties were bound under a contract of hire at the time in question. Conclusory assertions made by way of pleading hardly negate equally conclusory assertions made by way of affidavit. The existence of a single, facially ambiguous check [12] does not upset this balance; nor does the fact that Trailways dominated DCSP as a matter of corporate structure imply an agreement by Peterson to be bound to it as his employer. On the contrary, the available facts indicate that Peterson never dealt directly with personnel at Trailways empowered to pass upon his status or performance as an employee. Peterson has consistently maintained both in this matter and in earlier workmen's compensation proceedings that DCSP was his employer at the Denver garage. The record affords no clear assurance of a contrary or supplemental agreement.[13]

Confronted with this obstacle, counsel for Trailways contends that "an employee cannot sue an employer's parent corporation ... the parent corporation is entitled to the same protection and immunity as a wholly owned subsidiary under applicable Workmen's Compensation Statutes." Brief at 4. Coco v. Winston Industries, Inc., 330 So.2d 649 (La.App.1976), rev'd on other grounds, 341 So.2d 332 (La.1977); Wells v. Firestone Tire and Rubber, 97 Mich.App. 790, 296

9. Rocky Mountain Dairy Products v. Pease, 161 Colo. 216, 422 P.2d 630, 632 (1967).

10. See Colo.Rev.Stat. § 8–48–101 (1973, 1980 Supp.) and discussion infra.

11. Colo.Rev.Stat. § 8–52–108 (1973); Kandt v. E.B. Evans, Colo., 645 P.2d 1300 (1982).

12. Supra, note 6.

13. While it is true that the existence of an employment relationship between Peterson and DSCP does not necessarily negate the possibility of other contracts of hire, this possibility must certainly become attenuated where the subject matter is identical and the putative employers are closely related. Compare Rocky Mountain Dairy Products, supra.

N.W.2d 174 (1980); *Goldberg v. Context Industries,* 362 So.2d 974 (Fla.App.1978); and *Taylor v. Pfaudler Sybron Corp.,* 150 N.J.Super. 48, 374 A.2d 1222 (1977), *cert. denied,* 75 N.J. 20, 379 A.2d 251 (1977); are cited in support of this position and are said to represent the "substantial weight of authority in the United States." Brief at 4. These assertions are not supportable upon careful analysis.

The *Taylor* decision is not on point. In that instance, the plaintiff, an employee of Sybron Corporation's chemical manufacturing division, was injured as the result of defects in a vat constructed by Pfaudler Company, a separate division of Sybron. After receiving an award of workmen's compensation benefits, Taylor sued Pfaudler in tort, contending that the latter occupied the position of a third party since it was engaged in an enterprise distinct from the one in which he was employed, although both were part of a single corporation. The court declined to adopt this enterprise theory of employment,[14] holding to the contrary that "[t]he mere use of divisions or departments, or the labeling of these divisions by proper names ..."[15] did not suffice to create two entities from one. The instant matter presents the converse of this problem, and, not surprisingly, the New Jersey courts have reached a different conclusion in cases of its type.[16]

While they reach the conclusion desired by the Defendant, the *Coco* and *Wells* opinions express radically divergent approaches to the problem, and in neither case is immunity predicated upon the mere fact of a parent-subsidiary relationship. In *Coco,* the parent corporation contended that it was protected under the Louisiana Act's "statutory employer" provision. La.R.S. 23:1061; *compare* Colo.Rev.Stat. § 8–48–101 (1973, 1980 Supp.). The court agreed, but upon the ground that the facts of the matter warranted a finding that the subsidiary was an "alter ego." No explanation was made of why court-created doctrine was applicable to analysis of a statutory provision keyed to a contractual relationship; nor did the court stop to consider whether an entity would be capable of forming a "principal-contractor" relationship with its alter ego. *See also Baker v. T.L. James & Co., Inc.,* 398 So.2d 1223 (La.App.1981). In *Wells* the court found that while a wholly-owned and dominated subsidiary for which the plaintiff provided services might be a "separate corporate entity," the plaintiff himself was to be treated as an employee of the parent in accordance with the situation's "economic reality." This somewhat ironic result was achieved through the application of a standard developed by the Michigan Supreme Court to determine the "independent contractor/employee question" in cases implicating co-employee or employer immunity. *Nichol v. Billot,* 406 Mich. 284, 279 N.W.2d 761, 765 (1979). Inasmuch as analysis of the employee independent contractor distinction assumes the existence of a consen-

**14.** *See* Davis, *Workmen's Compensation—Using an Enterprise Theory of Employment to Determine Who Is a Third Party Tort-Feasor,* 32 U.Pitt.Law Rev. 289 (1971).

**15.** *Id.* 374 A.2d at 1224.

**16.** *Mingin v. Continental Can Co.,* 171 N.J.Super. 148, 408 A.2d 146 (1979) presented a situation substantially identical to *Taylor,* save for the fact that the plaintiff's immediate employer was a wholly-owned subsidiary. The court declined to disregard the subsidiary's corporate form and, consequently, held that the tort action against the parent and another subsidiary was not barred by the exclusive remedy rule. *Taylor* was easily distinguished as concerned with a situation in which "a merger in law or fact would preclude a common law action ...." 408 A.2d at 148. *Mingin* was cited favorably by the New Jersey Supreme Court in *Lyon v. Barrett,* 89 N.J. 294, 445 A.2d 1153 (1982), a case in which the shareholder of a professional corporation was denied the benefits of employer's immunity as against claims in tort brought by a corporate employee. In ruling on this point the court observed that:

> In general, the veil that protects a corporate principal from liability for business debts of the corporation, including the obligation to provide worker's compensation benefits, also precludes that principal from claiming the immunity of the corporation from liability in negligence to a corporate employee. Incorporation carries benefits as well as burdens; one cannot claim the benefits without the burdens.

445 A.2d at 1158.

sual relationship among the relevant parties, *Wells'* extension of the "economic reality test" to cases raising this initial question seems unwarranted. Thus, adherence to the indicators of "economic reality,"[17] may well threaten the economic interests of the "employee" since his consent or agreement receive no conscious analysis, but are considered at best as a matter of implication.[18] As observed by Professor Larson:

> Compensation law ... is a mutual arrangement between the employer and employee under which both give up and gain certain things. Since the rights to be adjusted are reciprocal rights between employer and employee, it is not only logical but mandatory to resort to the agreement between them to discover their relationship. [footnote omitted]. To thrust upon a worker an employee status to which he has never consented would not ordinarily harm him in a vicarious liability suit by a stranger against his employer, but it might well deprive him of valuable rights under the compensation act, notably the right to sue his own employer for common-law damages.

1C *Larson's Workmen's Compensation Law* § 47.10 at 8–233 (1980 Ed.)

Of the cases relied upon by Trailways, only *Goldberg v. Context Industries* supports its position as a matter of law. In a brief *per curiam* opinion the court ruled that:

> [T]he parent corporation of a wholly owned subsidiary which appears as a joint insured with the subsidiary corporation on a policy of workmen's compensation insurance is the "employer" of an injured employee of the subsidiary ... so as to bar an independent tort action against

the parent ... after the employee has collected workmen's compensation from the subsidiary ....

362 So.2d at 975.

No explanation for this exceptional holding was elucidated beyond the court's statement that it had "careful[ly] examin[ed] ... the record on appeal ...." *Goldberg* was rejected by the Fourth District Court of Appeal of Florida in *Wilkerson v. Gulfstream Land and Development Corp.*, 402 So.2d 550 (1981). The Florida Supreme Court has yet to reconcile the conflict.

Heeding well established principles of corporation law, a number of courts have refused to allow a parent corporation the benefits of employer's immunity when sued in tort by an employee of its subsidiary. *Love v. Flour Mills of America*, 647 F.2d 1058, 1062 (10th Cir.1981) (applying Oklahoma law); *Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655 (6th Cir.1979), *cert. denied*, 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47 (1979) (applying Kentucky law); *Stoddard v. Ling-Temco-Vought, Inc.*, 513 F.Supp. 314 (C.D.Cal.1980) (applying Texas law); *O'Brien v. Grumman Corp.*, 475 F.Supp. 284 (S.D.N.Y.1979) (applying Georgia law); *Latham v. Technar, Inc.*, 390 F.Supp. 1031 (E.D.Tenn.N.D.1974) (applying Tennessee law); *Thomas v. Hycon, Inc.*, 244 F.Supp. 151 (D.D.C.1965) (applying Maryland law); *Samaras v. GATX Leasing Corp.*, 75 A.D.2d 890, 428 N.Y.S.2d 48 (1980); *Phillips v. Stowe Mills, Inc.*, 5 N.C.App. 150, 167 S.E.2d 817 (1969).[19] The rationale underlying these decisions is elementary: Absent a showing of fraud or other injustice, the corporate identity of a subsidiary will not be disregarded. Since it is hardly unjust to

---

**17.** The test "is not a matter of terminology, oral or written, but of the realities of the work performed. Control is a factor, as is payment of wages, hiring and firing, and the responsibility for the maintenance and discipline, but the test of economic reality views these elements as a whole assigning primacy to no single one." *Schulte v. American Box Board Co.*, 358 Mich. 21, 33, 99 N.W.2d 367, 372 (1959).

**18.** This concern was not particularly evident in *Wells* itself since the plaintiff had, prior to instituting suit, claimed and received work-

men's compensation benefits from the defendant. Nonetheless, it bears mention that *Wells* had not been cited officially in or outside Michigan. *Compare Choate v. Landis Tool Co.*, 486 F.Supp. 774 (D.Mich.1980).

**19.** *See also Brown v. Moorhead Oil Company*, 239 S.C. 604, 124 S.E.2d 47 (1962); *Index Drilling Co. v. Williams*, 242 Miss. 775, 137 So.2d 525 (1962); *Wilkerson, supra; Mingin, supra;* note 16; *Lyon, supra,* note 16; *Choate, supra,* note 18.

require a parent corporation to recognize the existence of an entity which it has posited as separate and complete, a strong factual showing to the contrary must be made. Thus, attempts to "pierce the corporate veil" predicated upon common insurance coverage, common payroll funding, and identity of management have failed. *Boggs, supra; Stoddard, supra; O'Brien, supra; Latham, supra.* In the words of the *Boggs* court:

> [A] business enterprise has a range of choice in controlling its own corporate structure. But reciprocal obligations arise as a result of the choice it makes. The owners may take advantage of dividing a business in separate corporate parts, but principles of reciprocity require that courts also recognize the separate identities of the enterprises when sued by an injured employee. (Citation omitted.)

590 F.2d 655 at 662.

In a like vein, the Colorado Supreme Court has refused to disregard the corporate form unless it has been

> shown that the stockholders' disregard of the corporate entity made it a mere instrumentality for the transaction of their own affairs; that there is such unity of interest and ownership that the separate personalities of the corporation and the owners no longer exist; and to adhere to the doctrine of corporate entity would promote injustice or protect fraud. (*Citing* 1 Fletcher, *Cyclopedia of Corporations,* § 41.1.)

*Fink v. Montgomery Elevator Company of Colorado,* 161 Colo. 342, 421 P.2d 735, 739 (1966).

*See also Industrial Commission v. Lavach,* 165 Colo. 433, 439 P.2d 359 (1968). In keeping with the alter ego doctrine's focus on questions of equity and policy, the Colorado

courts have placed particular emphasis upon the requisite of fraud or other wrongdoing. *Contractors Heating and Supply Co. v. Scherb,* 161 Colo. 584, 432 P.2d 237 (1967); *Rosebud Corp. v. Boggio,* 39 Colo.App. 84, 561 P.2d 367 (1977); *Hill v. Dearmin,* 44 Colo.App. 123, 609 P.2d 127 (1980); see generally Henn, *Corporations,* Chap. 7, § 146, at 250 (1976 Ed.). This focus has not been altered where entitlement to workmen's compensation benefits is at issue. *Industrial Commission v. Lavach, supra.* Thus, while the Colorado courts have not directly addressed the instant question, there appears to be little doubt but that they would follow the approach outlined by the majority, to wit: In the absence of a "contract of hire" between the "employee" and the parent corporation, the bar of workmen's compensation may obtain only in those instances where the facts compel disregard of the subsidiary's separate existence.[20]

The undisputed facts of this matter clearly fail to satisfy the standard enunciated in *Fink, supra.* There is no indication that the corporate form of DCSP was disregarded by Trailways either as a matter of administration, accounting, or initial capitalization. As discussed, DCSP management appears to enjoy substantial control over day to day operations. There is no pervasive consolidation of corporate records, and DCSP clearly possesses operating capital sufficient to meet its costs, including workmen's compensation coverage. Moreover, all indications are that routine corporate formalities are observed with regard to DCSP. While there can be no doubt that, consistent with its ownership position, Trailways exercises ultimate control over DCSP operations, the record is devoid of proof to the effect that

**20.** Except for the employee/independent contractor question, I find no support in Colorado authority for the proposition that considerations of "economic reality" superceded the existence of a contractual relationship in the definition of employment for purposes of workmen's compensation. *Faith Realty & Development Corp. v. Industrial Commission,* 170 Colo. 215, 460 P.2d 228 (1969). Indeed, the express terms of the Colorado WCA counsel directly to the contrary. Thus, I conclude that when available evidence indicates a contractual relationship only between the employee and a subsidiary capable of independent recognition, any further consideration of ultimate control or payment is irrelevant to the operation of the exclusive remedy rule. In so holding, I do not reach the issue of whether disregard of the subsidiary, without more, suffices to establish an employment relationship between the parent and the "employee."

Trailways has used DCSP assets as its own. *Compare Rosebud Corp. v. Boggio, supra.* Thus, I think it obvious that recognition of DCSP as a separate corporate entity would hardly "promote injustice or protect fraud."

I conclude that DCSP may not properly be regarded as an alter ego of Trailways. Trailways appears to have conceded as much through its vice president's admission that "the companies are separate corporations." Consequently, the bar of workmen's compensation may not be asserted against the Petersons as a matter of corporate structure.[21] It remains to be seen whether the necessary employment relationship might be supplied under the terms of Colorado's "statutory employer" provision.

It is provided by Colo.Rev.Stat. § 8–48–101(1) and (2) (1973, 1980 Supp.) that:

(1) Any . . . corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof to any lessee, sublessee, contractor, or subcontractor . . . shall be construed to be an employer . . . and shall be liable as provided . . . to pay compensation for injury or death resulting therefrom to said lessees, sublessees, contractors, and subcontractors and their employees or employee's dependents . . . [S]uch lessee, sublessee, contractor, or subcontractor, as well as any employee thereof, shall be deemed employees as defined in said articles. . . .

(2) If said lessee, sublessee, contractor, or subcontractor is himself an employer in the doing of such work and, before commencing such work, insures and keeps insured his liability for compensation . . . neither said lessee, sublessee, contractor, or subcontractor, its employees, or its insurer shall have any right of contribution or action of any kind, including actions under section 8–52–108, against the . . . corporation operating or engaged in or conducting any business by leasing or contracting out any part or all of the work thereof, or against its employees, servants or agents.

Trailways asserts that since it carried on a part of its ordinary business at the Denver garage, the terms of § 101(1) and (2) insulate it from the instant suit. I disagree.

Although the Colorado courts have not tested the effect of these provisions under facts similar to those at issue, I think it plain that at no point has the "regular business test" been posited as the sole criterion whereby the existence of a statutory employment relationship is to be judged. *San Isabel Electric Assn., Inc. v. Bramer,* 182 Colo. 15, 510 P.2d 438 (1973); *Pioneer Construction Co. v. Davis,* 152 Colo. 121, 381 P.2d 22 (1963); *Standard Oil Co. v. Industrial Commission,* 38 Colo.App. 39, 552 P.2d 1029 (1976); *see also Rhodes v. Industrial Commission,* 99 Colo. 271, 61 P.2d 1035 (1936); *Flick v. Industrial Comm.,* 78 Colo. 117, 239 P. 1022 (1926). In workmen's compensation matters, as elsewhere, a court may not "extend the rule of liberal construction to a case that is removed by the statute itself." *Maley v. Martin,* 111 Colo. 545, 144 P.2d 558, 560 (1943). And, in this instance, the statute clearly requires that the business in question be carried on "by leasing or contracting out any part or all of the work thereof . . . ."

Trailways has adduced no evidence whatsoever of a lease arrangement between itself and DCSP.[22] The record is equally silent with respect to the existence and terms of a contract between the two entities. Even if one assumes that Trailways has exercised plenary control over DCSP operations, it by no means follows that DCSP's functional dependency places it in the position of a contractor or subcontractor as a matter of law. *Boggs v. Blue Diamond*

---

**21.** As observed by the court in *Love v. Flour Mills of America, supra,* it does not follow from the mere fact of corporate separateness that a claim for relief has been stated against the parent. An independent act of negligence must be alleged. *See also Dobbs v. Blue Diamond Coal Co., supra; O'Brien, supra.* For the purposes of this motion, however, it suffices to observe that the parties agree on the fact that sole responsibility for garage security lies with Trailways.

**22.** As noted, the garage property is owned and leased to DCSP by Four Seasons Realty, Inc., a corporate entity separate and distinct from Trailways.

*Coal Co., supra.* On the other hand, Colorado case authority does not appear to posit a theoretical bar to contractual relations between dominant and dependent entities. *Industrial Commission v. Lavach,*[23] *supra.* Nonetheless, the fact that these relations may implicate the standards and policies of workmen's compensation does not, of itself, remove them from the body of law generally applicable to contracts. *Hall v. State Compensation Insurance Fund, supra; Denver Truck Exchange v. Perryman, supra.*

 I therefore conclude for purposes of this motion that Trailways does not occupy the position of statutory employer vis-a-vis Mr. Peterson. Because Trailways appears in all other respects to be a stranger to Peterson's employment relationship, the instant suit is fully consistent with the law and policy of Colorado's Workmen's Compensation Act. Accordingly, It is

ORDERED that the Defendant's Motion for Summary Judgment is denied.

See also, D.C., 555 F.Supp. 1142.

---

**23.** I consider it noteworthy, however, that the contract at issue in *Lavach* preceded the acquisition of control.