## No. 16,182.

### ARVAS *v.* McNEIL COAL CORPORATION ET AL.
(203 P. [2d] 906)

Decided January 31, 1949. Rehearing denied March 14, 1949.

Mr. EDGAR McCOMB, Mr. GODFREY NORDMARK, Mr. AL-
BERT E. ZARLENGO, for plaintiff in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr.

Duke W. Dunbar, Deputy, Barbara Lee, Assistant, for defendant in error Industrial Commission.

Mr. Forrest C. Northcutt, for the other defendants in error.

*In Department.*

Mr. Justice Holland delivered the opinion of the court.

Plaintiff in error will be designated herein as claimant, McNeil Coal Corporation as Employer, Employers' Mutual Insurance Company as Insurance Carrier and Industrial Commission of Colorado as the Commission.

Claimant, a coal miner, and employee of the McNeil Coal Corporation, was injured in the course of his employment October 18, 1944; upon filing his claim with the Commission, the usual hearings occurred and as a result, claimant received compensation for a permanent partial disability equivalent to seventy-five per cent (75%) loss of his right arm measured at the wrist; and his case before the Commission was closed. As a part of his treatment during the period following the injury to his right arm, a bone graft was made with bone taken from his right leg in an effort to improve the condition of his injured arm.

On January 27, 1948, claimant petitioned the Commission to reopen his case, attaching to his petition a report of Dr. T. H. Madigan showing in effect that claimant had a disability equivalent to eighty-five per cent as a working unit. In due course, the Commission reopened the case and hearing was had before a referee on April 28, 1948 at which claimant testified that he had done no work since his injury because he was physically unable to do so; that he had worked in the coal mines for thirty-five years and was unable to do any other type of work. Dr. Bradford Murphey, a witness for claimant, an

admittedly qualified specialist in nervous and mental diseases, testified that in his opinion, after an examination of the claimant, claimant is totally disabled; that fifty per cent of this disability is due to traumatic neurosis and fifty per cent to physical disability. Dr. Murphey further testified that the neurosis is a direct result of claimant's injury; that claimant had no neurosis prior to the accident in question.

The respondent employer offered the testimony of Dr. Robert G. Packard, an admittedly qualified orthopedist, and the testimony of Dr. Charles G. Freed, a neurosurgeon. Dr. Packard testified that he did not know whether or not the claimant was suffering from a neurosis, because that subject is not within his specialty, but within that of a psychiatrist.

Dr. Freed testified that claimant has no disability from a neurological standpoint and has no organic numbness in his arm or leg due to a nerve injury, but he stated that claimant could have a genuine numbness due to *mental condition* and that there might be some element of psychoneurosis in the case; that a psychiatrist is in a better position to evaluate neurosis than a man who specializes in neuro-surgery.

Following the hearing, and on April 28, 1948, the referee entered a supplemental order finding no disability in claimant's right leg and the physical disability in the right arm no greater than that for which compensation had been awarded and paid. The referee further included in his order that the claimant was contending that he was disabled due to traumatic neurosis, *but that there was equally credible testimony to the effect that claimant is not suffering from a traumatic neurosis.* The referee found that disability is limited to seventy-five per cent loss of the right arm measured at the wrist. and that claimant is entitled to no further compensation.

The required statutory petitions for review were filed with the Commission and supplemental orders issued, the final order being an approval of the referee's order

just referred to. In due course, the claimant sought review in the district court, which affirmed the award of the Commission and this writ of error is now prosecuted.

Simply stated, the claimant contends that he never recovered from the original injury; that there was a change in his condition and that he is now totally disabled; and the changed condition is claimed to be from a development of traumatic neurosis.

There is no contention that traumatic neurosis is not compensable. The claimant complains of that part of the finding of the referee as stated in the award, "equally creditable testimony is to the effect that the claimant is not suffering from a traumatic neurosis." Claimant's contention is that instead of there being a conflict in the testimony before the Commission, the undisputed testimony of Dr. Murphey is that claimant is suffering from traumatic neurosis.

██ ██ Counsel for claimant rightfully concede that if there was a conflict in the testimony on this question, the findings of fact cannot be disturbed, but insist that there is no conflict. We have many times held that if there is no conflict in the testimony, then the court is not bound by the findings of fact by the Commission. We have further held in *Maley v. Martin,* 111 Colo. 545; 144 P. (2d) 558, that where inferences drawn from the evidence by a referee are unwarranted, and there is no conflict in the testimony, the Commission's award may properly be set aside.

Considering that the Workmen's Compensation Act is to be liberally construed, it is our opinion that there is no conflict in the testimony as to the matter of claimant's present disability from traumatic neurosis, at least, not sufficient to warrant a denial of compensation for total disability. This is a liberal construction in the case. In arriving at this conclusion, we rely upon the following excerpts from the medical testimony given at the hearing April 28, 1949:

First, it is conceded by all parties interested that claimant is not malingering.

Dr. Bradford Murphey.

The Doctor's qualifications were admitted: "Q. Do you follow any specialty, Doctor? A. Nervous and mental diseases. Q. When did you first examine him? A. February 27, 1948. Q. When did you see him next time? A. On March 29th of this year. Q. Did you examine him at that time? A. Physically, yes, and neurologically. Q. In your opinion was Mr. Arvas suffering from any disability? A. Yes, he is. Q. What is the extent of his disability? A. I believe he is—as a working unit, he is totally disabled. Q. What is the cause of his disability? A. Well, he has an orthopedic disability * * * he is further disabled by virtue of the fact that this accident has concentrated all of his attention on himself and on his disabled arm and on his right leg and ankle * * * . I think that a fixation of interest is a neurological thing, but it is an extremely disabling thing. * * * I would say he was a totally disabled individual. Q. In your report you mention that 50% of disability is due to a traumatic neurosis. Is that the same thing as psycho-neurosis? A. Yes, . . . traumatic; I mean a neurosis that had two beginnings, at least, or was precipitated by trauma, or an injury. Q. Do you feel that the disability that Mr. Arvas has is a result of the injury given to you in the history? A. I do."

Dr. Robert G. Packard,
admittedly qualified as an orthopedic surgeon:

Cross Examination

"Q. Are you in position to state whether or not this man is suffering from a neurosis? A. Well, I don't like the word "neurosis" in his case very much. I don't know whether he is or not. I think the man probably is under the impression that he cannot work, but I feel that if he were put on an island where he had to work and it wasn't a matter of litigation, I think he would work,

could do some light work. I think a lot of it is in his attitude towards it. Q. Would the problem of psycho-neurosis be within your specialty? A. No, sir. Q. That would be within the specialty of a psychiatrist? A. Yes, sir."

Dr. Charles G. Freed,

an admitted specialist in neurological surgery. "Q. What is the date of your examination? A. April 20, 1948. Q. Did you find any disability, from a neurological standpoint? A. No, sir."

Cross Examination

"Q. Do you feel he could have had a genuine numbness due to a mental condition? A. That is possible, yes, sir. * * * Q. Doctor, do you feel that there is any element of psycho-neurosis in this case? A. There may be, yes, sir. Q. Would that be within your specialty? A. Well, that is not a surgical condition, but it does come up in definition diagnosis in surgery of the nervous system frequently. From that standpoint, yes, I think it does fall within the specialty.

* * *

"Q. Would you say that a psychiatrist is in a better position to evaluate neurosis— A. Than I am, you mean? Q. Yes, than a man that specializes in neurosurgery. A. Yes, I would."

The above questions and answers are to be found in the transcript of the record and are selected only on the question of psycho or traumatic neurosis. Dr. Murphey, testifying for claimant, is a specialist in that field, and his testimony is open and positive and not seriously questioned. This results in the case having been submitted to the referee and the Commission upon testimony that is not disputed, at least not seriously so, and in the absence of any dispute there is no conflict in the testimony as to the question that claimant is suffering from traumatic neurosis. There is no substantial conflict in the testimony on this question and this court may properly draw its own conclusions therefrom and direct the

entry of judgment accordingly, notwithstanding the determination may be contrary to the findings and award of the Commission. *Industrial Commission v. Betz,* 111 Colo. 401, 142 P. (2d) 389.

The inference drawn by the referee in his award, when considered in the light of the testimony above set out, was unwarranted.

Since we hold that claimant has disability from traumatic neurosis, we leave the percentage of disability for a finding to be made by the Commission. The contention has been made that claimant could do some kind of work. It is not disputed that he has permanent partial disability of his right arm equal to a loss of seventy-five per cent measured at the wrist. When the neurosis element is added, in consideration of claimant's history and background, it is doubtful if he is not totally disabled as a working unit, however, we do not impose this suggestion on the Commission.

The judgment of the district court affirming the award of the Commission is reversed with directions to remand the case back to the Industrial Commission for its finding in accordance with the views herein expressed.

MR. CHIEF JUSTICE HILLIARD and MR. JUSTICE STONE concur.