## ·No. 19,794.

## THE INDUSTRIAL COMMISSION OF COLORADO AS EX-OFFICIO UNEMPLOYMENT COMPENSATION COMMISSION, ET AL. *v.* THE EMERSON WESTERN COMPANY.

(369 P. [2d] 791)

Decided March 19, 1962.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for Industrial Commission.

Messrs. Graham and Scheunemann, for claimants.

Mr. Ernest O. Tullis, Mr. Clinton M. Cole, for defendant in error.

*In Department.*

Opinion by Mr. Justice Sutton.

This is an action for a penalty assessment against an employer under the Colorado Employment Security Act (C.R.S. '53, 82-4-9 [1].

The sole determinative question is whether the defendant in error employer, hereinafter called Emerson, made a false statement as to the reason for the separation of employees from its service which in turn resulted in a delay in the payment of benefits to certain former employees who are claimants here. The applicable penalty, if Emerson is guilty, is one and one-half times the amount of benefits due during the delayed period.

The pertinent facts are as follows:

Four female employees of Emerson (Tasker, Pate, Flood and Babbitt) left their place of employment in Colorado Springs during their lunch period and admittedly purchased some beer to drink with their meal. They, together with five employees not involved in this writ of error, were subsequently discharged because of events which later transpired. The four named employees, following their lunch period, allegedly carried four cans of beer back to the plant. Then one or more of them carried it surreptitiously, according to Emerson, into employer's plant in thermos bottles contrary to regulations. It was then drunk by them or shared with others, these claimants becoming noisy and failing to work as re-

quired. After complaints from other employees as to this conduct Emerson satisfied itself as to the facts, held a hearing with the employees involved and subsequently discharged them.

The Industrial Commission of Colorado as ex-officio Unemployment Compensation Commission of Colorado, through its Department of Employment Security, requested the necessary wage and separation information from Emerson as to the grounds of discharge — such information being essential to determine the proper amount of the unemployment compensation claimed by the discharged employees. In response to the written request Emerson responded that each claimant was "Discharged for drinking during the work day and misconduct." Based on this information a deputy penalized the claimants for gross misconduct which ruling was later overturned at a hearing before a referee. In the meantime and before the referee heard the case, the department requested data on what had transpired from the claimants and they replied that they had been discharged for drinking one beer each on their lunch period; that this was off Emerson's premises; and that they had not been accused of misconduct. Then followed a further request by the department to Emerson which recited the claimants' position and then stated:

"It will be necessary that you advise the Department if these statements as submitted by the claimants are true. Also, any additional information which would assist us in making a proper determination of their eligibility for benefits would be appreciated * * *."

Emerson then replied by forwarding to the department a written statement dated March 2, 1960, purporting to be the minutes of an interview with the claimants when they were discharged. The statement is as follows:

"Subject:

"Discharge for drinking during the work day and misconduct during working hours involving nine Associates.

The first two named are also charged with bringing liquor into the plant during working hours.

"Involved were:

| | |
|---|---|
| Ann Fouse | Clock No. 350 |
| Doris McKinney | 475 |
| Rose Babbitt | 357 |
| Virginia Pate | 295 |
| Norma Tasker | 257 |
| Mary Parsons | 166 |
| Mildred Flood | 144 |
| Denise Gail | 384 |
| James Harrie | 268 |

"A number of Associates made complaints to Management that the above named were drinking or under the influence of liquor in the plant, and that liquor was brought into the plant during working hours.

"The incident occurred on Friday afternoon February 26, 1960.

"When confronted with the charges all of the Associates admitted drinking off the plant premises during the noon lunch period excepting James Harrie who remained in the plant during the noon hour.

"Ann Fouse admitted that at the instigation of the group she left the plant, went to her car and returned with liquor in a thermos bottle. Doris McKinney admitted she left her job and admitted Ann Fouse on her return, through the Associate's entrance.

"All of the involved denied drinking on the plant premises. Norma Tasker, Ann Fouse and Doris McKinney stated that James Harrie was invited to have a drink by Doris McKinney which he accepted. Harrie stated there was nothing in the container he drank out of but coffee.

"The Associates were asked if they were aware that working under the influence of liquor was against the Company rules and all replied in the affirmative. They were asked if they knew that leaving their work stations frequently for no legitimate reason, loud talk and hilarity

during working hours was misconduct on their part and all replied in the affirmative.

"Mr. Hoddy stated on the basis of the complaints from other Associates and the admissions of guilt to the charges there was no alternative but to terminate their services with the Company. He advised them that in order not to create a hardship in obtaining employment elsewhere, they would be given permission to resign if they so desired. Flood, Tasker, Pate, Parsons and Babbitt requested a discharge with Fouse, McKinney and Gail requesting permission to resign. The latter three later returned to Personnel and asked that their resignations be changed to discharge.

"Present at the meeting besides the above named was J. S. Hoddy, L. W. Keller, and H. D. Palmer."

Following receipt of Emerson's statement a deputy of the department imposed upon all the claimants in a consolidated order the maximum penalty under the Act and set forth as the basis for the penalty as to each claimant that:

"Information submitted to this Department indicates that this claimant was discharged from employment with the employer indicated on this notice for drinking during the working day and misconduct during working hours. Information submitted indicates that the claimant's discharge was warranted and that she was discharged for gross misconduct in connection with her work."

The claimants appealed the decision of the deputy as it related to each of them and a hearing was held before Referee Richard M. Lee in Colorado Springs on April 26, 1960. At this hearing three company officials testified that they had received reports that there had been drinking on the day of the discharge and that the claimants had been "implicated" as participants in a "party." At the conclusion of their testimony the referee advised the company representatives that the company * * * has had every opportunity to specify certain acts

by these individuals or any of them which might have constituted misconduct, but except in the case of Anneice Fouse and McKinney, failed to point out any act or acts which could constitute misconduct * * *."

The company representatives indicated that after the lunch recess they would produce the witnesses who had made the reports to the company officials upon which the discharges had been based. When the hearing reconvened, however, a representative made the following statement:

"MR. PALMER: As Personnel Manager, I am solely responsible to the President, and my decision during this period from the first part of the hearing to now is that I do not wish to present witnesses in this case, and insofar as the Company's action is concerned and the testimony taken thus far, the case is ended.

"THE REFEREE: You don't, then, see fit to produce these witnesses who may have had some independent contact with this so-called misconduct?

"MR. PALMER: That is correct. Not at this time I don't."

Counsel for the claimants then moved that the department set aside the disqualification of the claimants and that it penalize the company for having made false statements to the department resulting in a delay in the payment of benefits to claimants.

On May 5, 1960, the referee issued his findings in which he found that none of the claimants had been guilty of misconduct and that "No disqualification seems indicated as to any of these appellants." He denied the request to penalize the company. No appeal was filed from the referee's decision removing the disqualification, but claimants appealed to the Industrial Commission from the referee's refusal to penalize the company. A transcript of the record was made and furnished the claimants and the company and written arguments were submitted to the Commission. Along with its written argument the company submitted affidavits from numer-

ous witnesses — none of whom had appeared at the hearing — to support its charges of misconduct.

On July 7, 1960, the Industrial Commission issued its order, finding that Emerson's statement by dictionary definition was "not true; incorrect; as, a false statement." The Commission's order read in further pertinent part:

"In no reading of this statutory command does one discover use of words such as willful or deliberate to penalize malicious intent while protecting a negligent indifference in preparation of said statements. Nay, the burden rests squarely upon each employer's shoulders to be correct and truthful before releasing a statement calculated to deny a suffering employee access to funds for his subsistence. The burden is strict, narrow and meanfully enacted to protect the unfortunate from maliciousness and that which is even more deadly — negligent indifference.

"Examination of the hearing record is fruitful of countless innuendoes and equally countless gems of 'faceless' hearsay woven to prove veracity of employer's statement of gross misconduct. Excluding these items of tailored procedure one can only read a record barren and sterile of any probative evidence even remotely tending to lend substance to alleged misconduct."

The Commission affirmed the referee's order as to there being no disqualification of benefits for the discharged employees, but reversed it as to the statutory penalty on the employer for making false and misleading statements.

Emerson, which up to then had been appearing pro se, engaged counsel and sought review in the district court where after hearing that part of the order imposing the penalty was vacated.

Plaintiffs in error assert several grounds for reversal, but as stated earlier the real question here is whether Emerson did in fact make a false statement in its reply to the department.

Turning to the evidence before the department it discloses: First, Emerson was asked why *it* had discharged the claimants. It replied to the request, and following denial of the charges by claimants, was asked for more details as to the reason for the discharges. In response it gave *its* version of the incidents leading to the discharges.

Nothing in this record proves that Emerson had other than its stated reasons for the discharges. Whether the reasons given for discharge were in law sufficient to reduce the normal unemployment benefits to claimants is immaterial. The issue here is whether the employer made a false statement as the reason for the discharges.

Had Emerson stated at the hearing that it had discharged the claimants for some reason other than set forth in its responses to the Commission, one or the other would have been a falsehood.

■ Without intent to falsify being shown, Emerson could not be held liable for making a false statement. The fact that Emerson did not choose to elaborate on the reasons for discharge or support them with additional testimony at the hearing is immaterial, and is not proof that what had been reported was not the reason for the discharges. The statute in question is not intended to penalize an employer where, as here, the grounds assigned for discharge are ample if believed by the employer, even though given a contrary construction by others. There is no presumption under the statute of a malicious intent on the part of an employer.

■ There being no material conflicts in the evidence before the Commission, the courts may reach their own conclusions, and are not bound by the findings of fact of the Commission. *Arvas v. McNeil Coal Corp.,* 119 Colo. 289, 203 P. (2d) 906 (1949). We conclude that the statements furnished by Emerson, not being willfully or deliberately false, are not such as come within the penal terms of the statute. See *McBride v. People,* 126 Colo. 277, 248 P. (2d) 275 (1952) for definitions of "false" used

by this Court in a criminal case, and see 35 C.J.S. *False*, 613-618 for definitions and general usage of the term "False."

Cross error is assigned by Emerson but in view of our holding it is not necessary to determine the issues raised thereunder.

The judgment is affirmed.

MR. JUSTICE McWILLIAMS and MR. JUSTICE PRINGLE concur.