No. 19,894.

The Industrial Commission of Colorado, et. al.,
*v*. Leslie H. Saffeels.

(371 P. [2d] 438)

Decided April 16, 1962.   Rehearing denied May 28, 1962.

Mr. Duke W. Dunbar, Attorney General, Mr. Frank E. Hickey, Deputy, Mr. Peter L. Dye, Assistant, for plaintiff in error Industrial Commission of Colorado.

Messrs. Sheldon and Nordmark, Mr. James T. Bayer, for plaintiffs in error Standard Accident Insurance Company and The Platte Anchor Bolt Company.

Mr. Benjamin R. Loye, Mr. Richard W. Bangert, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HALL.

WE refer to the Industrial Commission of Colorado as the commission, to The Platte Anchor Bolt Company as the employer, and to the defendant in error as the claimant.

On December 9, 1958, the claimant, then sixteen years of age, suffered injuries to his left hand necessitating the amputation of his index, middle and ring fingers at the proximal joints. He filed his claim for compensation with the commission.

The employer admitted liability. The commission awarded claimant compensation for temporary disability and permanent partial disability of seventy-five percent of loss of use of his left hand as measured at the wrist, as provided by C.R.S. '53, 81-12-4. None of the parties question the propriety of this portion of the award of the commission.

Claimant, however, urged that in addition to the foregoing physical injury, he, as a result of said injury, suffered a traumatic neurosis or anxiety reaction, including an emotional state of fear, shame and tension causing permanent partial disability for which he is entitled to be compensated to the extent of ten percent as a working unit.

To support his claim for this additional ten percent, claimant testified in his own behalf and produced the testimony of his mother and that of a psychiatrist.

Claimant testified as to his injuries, the fact that he returned to his former job and performed work similar to that he had previously performed, at the same rate of pay, and was laid off because the employer had no present need for his services, a condition due largely to the shortage of steel occasioned by the steel strike. Since being laid off he has had several jobs and found it rather difficult to obtain employment, and he is now employed

as a delivery boy at a wage slightly less than that received at the time of his injuries. In answer to leading questions loaded with suggested answers, he admitted his relationship with his mother and younger brother and sister was not as good after his injuries as before.

Claimant's mother testified that claimant is more irritable since his accident, doesn't get along with the younger children or her as well as before; he does not have as good an appetite as before, is restless, wants to be alone, doesn't sleep too well, and that she is actually afraid of him, can't control him because he now says "he is not a kid any more, he is grown up."

On January 28, 1960, some thirteen months after the accident, claimant's attorney, looking forward to hearing to determine the extent of permanent disability, arranged for the psychiatrist witness to examine the claimant for psychiatric evaluation purposes. Prior to this time the psychiatrist had not known or seen claimant. According to the testimony of this witness he spent about one and one-half hours talking to claimant and also had before him background material supplied by claimant's mother. Predicated on this background material and his interview with claimant, he concluded and expressed the opinion that claimant at the time of his examination was suffering from a feeling of anxiety reaction, physical trauma, emotional trauma, present anxiety, embarrassment in public, a feeling of shame, a desire to go to school, a feeling of loss, which resulted in a ten percent disability as a whole.

Among other statements of the psychiatrist we find the following:

"My observations were that this, that Mr. Saffeels was a moderately anxious seventeen year old young man. He appeared somewhat tense and a little restless. He actually on first questioning denied that there was anything particularly bothering him. It took quite a bit of talking with him before I could gradually unfold the story about

his difficulty. In other words, he certainly didn't pour out his troubles. * * *

" * * * But over the course of this hour and a half I began to get a somewhat different impression."

From this testimony it is very difficult to determine at just what point of time, in this one and one-half hour seance with this boy, indoctrination ceased and observation commenced.

In his report we find this statement:

"So that according to his own statement he has suffered from loss of appetite, he has lost weight, he doesn't sleep so soundly as he did, he wakes up feeling tired, hardly gets out of bed until he wants to get back in. This I interpreted to mean he has a chronic state of emotional tension."

From the record we observe that the claimant, though called as a witness in his own behalf, interrogated by leading questions, testified to none — absolutely none — of this background material.

Giving further expression to his opinion, the psychiatrist stated:

"Well, anxiety reactions are the result or the end result of many different factors, but when you see a definite event in the person's life and following that certain apparent changes, then you can only make a *supposition* or *presumption* that this is the cause and effect." (Emphasis supplied.)

By way of elucidation as to the alleged ten percent partial disability as a whole, he stated:

" * * * I think it should be noted the difficulty of being exact in this sort of thing. * * * I would say on that basis that I have probably considerably underrated rather than overrated the disability.

" * * * It was a bit on the *nebulous side* to come out with something that would be exhorbitant or excessive." (Emphasis supplied.)

"Q. In other words, you are basing your opinion then

on things other than his industrial capabilities? A. Partly."

Uncontradicted medical testimony offered in behalf of claimant as well as that offered by the employer was to the effect that claimant's disability consisted of seventy-five percent loss of the hand at the wrist.

Testimony of the employer indicated claimant after the accident was able to perform the same or more difficult duties than those being performed when injured, and that his attitude after the accident was the same as before and he did not observe the alleged anxiety, shame, etc., that the psychiatrist observed.

After hearing all of the testimony, observing the demeanor of all of the witnesses and the claimant during the proceedings, the referee found claimant's permanent partial disability to be seventy-five percent loss of the hand. He also found that the testimony did not reveal any additional disability which affected claimant's well-being or his ability to perform duties which he had performed prior to his accident.

The commission approved the award of the referee and on review the district court reversed the findings and award of the commission and directed that the commission:

" * * * include in their Findings the disability of the mental condition of this Claimant; to be included in their Findings also a 75 percent disability of the left hand at the wrist."

The commission, employer and its insurance carrier are here by writ of error challenging the judgment.

The judgment of the trial court setting aside the award of the commission is erroneous.

It is true, as contended by counsel for the claimant, that the testimony of the psychiatrist was not contradicted by testimony of other psychiatrists. However, there is ample evidence in this record to support the award of the commission. Two orthopedic surgeons fixed claimant's disability commensurate with the award.

Claimant himself and his former employer proved that he was able to perform his prior duties.

The referee was under no obligation to accept the psychiatrist's opinion and understandably may well have considered it of no probative value for the reason that it was predicated on facts assumed and not proven, and other facts that did not exist if one accepts the testimony of the mother as true. At best, his testimony and opinion were nebulous, ethereal, misty, and lacking in probative value.

■ In addition, there is not one word of testimony of anyone, opinion or otherwise, that claimant suffered any loss of earning power or any diminution of his ability to perform the work which he was employed to perform other than that compensated for by the award.

Counsel for claimant urge that our decision in *Arvas v. McNeil Corp.*, 119 Colo. 289, 203 P. (2d) 906, is decisive of this case. We find no resemblance in the two cases. In *Arvas v. McNeil*, supra, claimant lost an arm and because of his injuries never was able to return to his regular work or any other job, and there was competent medical evidence that he suffered from a traumatic neurosis. Here, the testimony is undisputed that the claimant could and did perform his previous work and was at all times, including the date of hearing of his claim, performing work assigned to him without any appreciable difficulty.

Claimant's lack of social engagements, crossness with his brother and sister, arguing with his mother, and insisting that he is grown up could well be natural biological developments inherent in one of his age, and are not matters for which compensation may be awarded.

The judgment of the trial court is reversed and the cause remanded with directions to affirm the award of the commission.

Mr. Justice Moore and Mr. Justice Sutton concur.