The **DENVER POST CORPORATION**, a Colorado corporation, Petitioner,

v.

**INDUSTRIAL COMMISSION** of the **STATE OF COLORADO**, (Ex-Officio Unemployment Compensation Commission of Colorado), and Harry H. Olsen, Respondents.

No. 83CA0212.

Colorado Court of Appeals, Div. II.

Jan. 5, 1984.

Eiberger, Stacy & Smith, Raymond W. Martin, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Alice Parker, Asst. Atty. Gen., Denver, for respondent Industrial Com'n.

Harry S. Bernstein, Denver, for respondent Harry H. Olsen.

BERMAN, Judge.

The Denver Post Corporation (employer) seeks review of the final order of the Industrial Commission only insofar as it awards Harry H. Olsen (claimant) a full award of unemployment benefits. We set aside that portion of the order appealed herein.

The following facts are undisputed. Claimant was employed by the Post as a printer in the composing room from 1967 until he resigned effective December 31, 1981. Claimant was a member of Denver Typographical Union No. 49 which was a party to an agreement with the Post dated April 1, 1979. A provision of this agreement, referred to as the "attrition clause," was applicable to claimant and provided in pertinent part that:

> "In order to provide security to the employees of The Denver Post and to provide a reasonable transition from present composition systems, the parties make the following agreements:
>
> It is agreed that ... Journeymen with a priority date on or before August 5, 1972 ... shall not lose their situations unless forced to vacate same through retirement, resignation, death or discharge for cause. It is agreed, therefore, that in exchange for this Attrition Agreement, the Publisher may use such equipment and processes in a manner which, in the Publisher's judgment, best suits the Publisher's operation."

In the latter part of 1981, the Post offered to buy out the rights of up to 40 composing room employees under the attrition clause by way of an agreement enti-

tled Job Separation Plan. The Plan offered employees who accepted the Plan the option of being paid cash in a lump sum or in installments in return for relinquishment of the employees' rights under the clause and for their resignation, to be effective no later than December 31, 1981. Claimant elected to participate in the Plan and received a lump sum payment of $25,000 cash in January 1982, in accordance with the option he selected.

The Post's personnel director testified that the Plan was offered to the entire membership of the local, that acceptance of the Plan was voluntary, and that if more than 40 employees indicated a desire to accept the Plan, there was a procedure to determine which 40 employees would be permitted to participate. The personnel director testified further that the Post was entirely satisfied with claimant's work, and that claimant would have retained his job had he elected not to accept the Plan.

Claimant indicated his concurrence with the facts as presented by the personnel director, and acknowledged that he had voluntarily accepted the Plan. He testified he thought that he had another job waiting, but that it failed to materialize.

The decision of the deputy awarding claimant full benefits was reversed by the order of the referee which found that claimant's benefits should be reduced pursuant to § 8–73–108(8), C.R.S.1973 (1982 Cum.Supp.) (quitting for personal reasons). The Commission reversed the order of the referee finding there was no showing that claimant was at fault in his separation, and that he was entitled to a full award of benefits pursuant to § 8–73–108(1)(a), C.R. S.1973 (1982 Cum.Supp.).

The employer contends that the Commission erred because this determination is not supported by the evidence. We agree.

■ Where, as here, there is no material conflict in the evidence before the Industrial Commission, the reviewing court may reach its own conclusions, and is not bound by the findings of fact of the Commission.

*Industrial Commission v. Emerson Western Co.,* 149 Colo. 529, 369 P.2d 791 (1962).

■ Unemployment compensation is intended for the benefit of persons involuntarily unemployed through no fault of their own. *International Typographical Union v. Industrial Commission,* 44 Colo. App. 29, 609 P.2d 634 (1980); § 8–70–102, C.R.S.1973. The word "fault" as used in the Act is not limited to something worthy of censure but must be construed as meaning failure or volition. *City & County of Denver v. Industrial Commission,* 666 P.2d 160 (Colo.App.1983).

■ The Commission's finding that claimant had to surrender his job and his rights under the attrition clause is correct, but only after he accepted the Job Separation Plan. Until that time, claimant could have rejected the Plan and retained his job. The undisputed evidence discloses that claimant for his own reasons elected to participate in the Plan and that he was paid in full. Claimant's separation from employment was not involuntary. *See International Typographical Union v. Industrial Commission, supra.*

■ Attached to claimant's brief on appeal is an exhibit which is characterized as evidence that claimant did not voluntarily quit his job. This document was not submitted to the Division or to the Commission, and we will not consider it for the first time on appeal. *See City of Aurora v. Aurora Firefighters' Protective Ass'n,* 193 Colo. 437, 566 P.2d 1356 (1977).

The order is set aside only insofar as it provides for a full award of benefits, and the cause is remanded with directions to the Commission to enter an order pursuant to § 8–73–108(8), C.R.S.1973 (1982 Cum. Supp.) denying claimant benefits attributable to the employer, subject to the maximum reduction consistent with federal law.

KELLY and BABCOCK, JJ., concur.