**Gilbert REDIN, Petitioner,**

**v.**

**EMPIRE OLDSMOBILE, INC., and the Industrial Commission of the State of Colorado, Respondents.**

**No. 86CA0744.**

Colorado Court of Appeals, Div. I.

June 18, 1987.

Cynthia A. Ward, Aurora, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Gregory K. Chambers, Asst. Atty. Gen., Denver, for respondent Industrial Com'n.

No appearance for respondent Empire Oldsmobile, Inc.

TURSI, Judge.

Gilbert Redin, claimant, seeks review of a final order of the Industrial Commission which ordered an offset of his unemployment benefits pursuant to Colo.Sess.Laws 1985, ch. 82, § 8–73–110(3) at 368, and further ordered him to repay $824 as an overpayment of benefits he had already received. We set aside the order of the Commission.

Claimant had been employed by Empire Oldsmobile, Inc. (employer) for approximately fourteen and one-half years as an automobile refinishing technician when in April of 1985 the employer ceased operation and as a result claimant's employment was terminated. At that time, he was forty-six years of age and had no intention to retire.

During his employment, claimant participated in the employer's retirement plan through the National Automobile Dealers and Associates Retirement Fund (retirement fund). The plan provided that the retirement fund be based upon a two percent of gross wage contribution by the employer and matched by a mandatory two percent deduction from the employee. The plan further provided that employees could contribute an additional eight percent after tax dollars by voluntary deductions.

Because the employer's retirement plan was no longer functioning, employee applied for and received a pay-out from the retirement fund. The settlement sheet showed that the employer's contribution had been $4,513.45 and the employee's mandatory matching contribution was in the same amount. Further, it showed that the employee had voluntarily contributed $8,673.24. Employee received a total of $26,452.99 of which amount $13,266.32 reflected the accrued vested benefits from the employer and the employee's mandatory contribution plus the interest earned thereon. The employee rolled the vested benefits into a tax deferred IRA.

At the hearing on employee's appeal of the repayment order, the hearing officer found that the lump sum pay-out was subject to being prorated and offset weekly against claimant's unemployment benefits pursuant to § 8–73–110(3)(a), as then in effect, and, consequently, ordered claimant to repay the $824 he had already received. The Industrial Commission affirmed and adopted the findings and conclusions of the hearing officer.

On review, claimant contends that the Commission erred in ordering the proration and offset because the lump sum pay-out did not constitute a "periodic payment" which required proration and offset pursuant to § 8–73–110(3)(a). We agree with claimant's contention and thus conclude that the Industrial Commission erred in ordering an offset and a repayment.

At the time of employee's claim, the pertinent statute, Colo.Sess.Laws 1985, ch. 82, § 8–73–110(3) at 368 provided:

"(a) An individual's weekly benefit amount shall be reduced (but not below zero) by the prorated weekly amount of a primary insurance benefit under Title II of the federal 'Social Security Act', a pension, *retirement or retired pay,* annuity, *or any other similar periodic payment* from a plan or fund which has been contributed to by a base period employer." (emphasis added)

In administering this section, the division of employment and training (the division) followed an internal standard operating procedure, which had not been promulgated as a formal regulation, and which provides that a retirement pension contributed to by base period employers will be prorated whether received in a lump sum or installment and whether the claimant draws his share of the plan first or receives a combination of his and the employer's share. Apparently the division based its proration on one hundred percent of the

pay-out divided by fifty-two weeks. Because of our disposition in this matter, we do not address how proration should be calculated if applicable.

Construction of a statute by administrative officials charged with its enforcement is to be given some deference by the courts. *See City & County of Denver v. Industrial Commission,* 690 P.2d 199 (Colo.1984). However, when construing a statute, a court must also read and consider the statute as a whole to determine legislative intent; must construe the entire act to give consistent, harmonious, and sensible effect to all parts; and must consider the ends the statute was designed to accomplish and the consequences which would follow from alternate constructions. *Dodge v. Department of Social Services,* 657 P.2d 969 (Colo.App.1982).

The provisions of the Colorado act concerning the administration of retirement benefits are patterned after and complimentary to the analogous provisions of the Federal Unemployment Tax Act (federal act). *Compare* § 8–73–110(3) *with* 26 U.S. C.A. §§ 3304–3306 (May 1987 Cum.Supp.). The legislative history of the federal act indicates that Congress enacted the retirement benefits offset because it was concerned about "double-dipping" by retirees who had actually withdrawn from the labor force and were being paid both unemployment and retirement benefits by the same employer. *See Edwards v. Valdez,* 602 F.Supp. 361 (D.Colo.1985); *Tucker v. Department of Employment Security,* 122 N.H. 958, 453 A.2d 1247 (1982).

After review of the Colorado legislative scheme set forth in § 8–73–110(3), we conclude that the policy behind it is also to prevent such "double dipping" by persons who are retired or are retiring at the termination of their employment. In those situations, if a person is retiring or has retired from the labor force, it may be appropriate to prorate and offset a lump sum payment of retirement benefits pursuant to § 8–73–110(3), C.R.S. (1986 Repl. Vol. 3B). *See Lipsky v. Levine,* 44 A.D.2d 95, 353 N.Y.S.2d 574 (1974), *aff'd,* 36 N.Y.2d 947, 373 N.Y.S.2d 552, 335 N.E.2d 857 (1975);

*McGraw–Edison Co. v. Department of Industry, Labor & Human Relations,* 72 Wis.2d 99, 240 N.W.2d 148 (1976).

Here, however, in light of the policy behind § 8–73–110(3) and the general policy of the Colorado act, as set forth in § 8–73–108(1)(a), C.R.S. (1986 Repl. Vol. 3B), which is to provide benefits to those persons who are unemployed through no fault of their own, we conclude that the lump sum pay-out claimant received was not a payment subject to the provisions of § 8–73–110(3).

The record indicates that claimant did not consider himself to be retired. *Cf.* § 8–73–108(4)(m), C.R.S. (1986 Repl. Vol. 3B) (eligibility for benefits in cases of involuntary retirement in accordance with company policy or at the volition of the employer). Forcing a separated employee, otherwise eligible for unemployment benefits, who desires to remain an active member of the labor force and who is still seeking employment, to exhaust his future retirement benefits before qualifying for unemployment compensation does not further the legislative purposes of the Colorado act. *See Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973). Rather, it would penalize the employee by forcing him to deplete a fund which has been set aside to provide him with income on which to live when he actually withdraws from the active labor force at the end of his work career. Until utilized as such, a retirement fund should have no bearing on unemployment benefits.

Accordingly, we conclude that application of the offset provision of § 8–73–110(3) to the pay-out received by claimant to be inconsistent with the purpose of the Colorado act, and unnecessary to prevent the abuse of the unemployment system by retirees. We hold, therefore, that the offset in § 8–73–110(3) should be applied only when a claimant is retired or is retiring at the termination of his employment, and the retirement benefits contributed to by the employer are in fact immediately available for utilization by the employee. Applying the offset only in actual retirement situations should assure that in-

dividuals who are unemployed, rather than retired, will not be penalized, while conversely assuring that individuals who are, in fact, retired are not improperly drawing unemployment benefits. *Cf. Edwards v. Valdez, supra.*

The order of the Commission ordering repayment of benefits received by the employee is set aside and further offset, if any, against the funds rolled over into the employee's IRA is set aside.

PIERCE and CRISWELL, JJ., concur.