Kathleen A. HOPKINS, Petitioner,

v.

INDUSTRIAL CLAIM APPEALS OFFICE of the State of Colorado and Colorado Department of Labor and Employment, Respondents.

No. 11CA0239.

Colorado Court of Appeals,
Div. III.

Dec. 22, 2011.

Richard Rosenblatt & Associates, LLC, Richard Rosenblatt, Greenwood Village, Colorado, for Petitioner.

John W. Suthers, Attorney General, John August Lizza, First Assistant Attorney General, Denver, Colorado, for Respondents.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

Opinion by Judge STERNBERG.*

In this unemployment benefits case, petitioner, Kathleen A. Hopkins (claimant), seeks review of a final order of the Industrial Claim Appeals Office (Panel). The Panel concluded that claimant was ineligible to receive any unemployment benefits pursuant to section 8–73–110(3)(a)(I)(B), C.R.S.2011, because she was receiving a pension that exceeded her weekly benefit amount. Claimant's base period employer, the Colorado Department of Labor and Employment, although it had not contributed to the pension during claimant's base period, contributed to the pension during a previous period of employment that ended with claimant's retirement. We set aside the order and remand with directions.

## I.  Background

The relevant facts are not in dispute. The hearing officer found that claimant worked for employer from June 1986 to July 31, 2001. Since August 1, 2001, claimant has been receiving a monthly pension payment of approximately $3000.

Claimant returned to work for employer on April 6, 2009, through August 14, 2009. During this second period of employment, employer did not contribute to claimant's pension plan. Claimant also did not contribute to a pension plan nor did she have the right to contribute to one during this period of employment.

Claimant established an initial claim for unemployment benefits effective on January 24, 2010, for a weekly benefit amount of $443, which was less than the weekly prorated amount of her pension. Claimant's base period ran from October 1, 2008, through September 31, 2009.

The hearing officer concluded that because employer did not contribute to claimant's pension during her base period employment, no reduction of her unemployment benefits was required under section 8–73–110(3)(a)(I)(B).

§ 24–51–1105, C.R.S.2011.

Upon review, the Panel reversed. The Panel, in a decision designated as precedential under Department of Labor and Employment Regulation 11.2.16.1, 7 Code Colo. Regs. 1101–2, concluded that a claimant's weekly unemployment benefits are reduced under section 8–73–110(3)(a)(I)(B) when he or she receives a pension, retirement or retired pay, or annuity that has been contributed to at any time by a base period employer. Therefore, because claimant was receiving a pension that had been contributed to by a base period employer, the Panel reversed the decision of the hearing officer and ordered that claimant's benefits were subject to reduction pursuant to section 8–73–110(3)(a)(I)(B).

## II. Discussion

### A. Legal Framework

■ We may set aside the Panel's decision if it is erroneous as a matter of law. *See* § 8–74–107(6)(d), C.R.S.2011. We review an agency's conclusions of law de novo. *See Davison v. Indus. Claim Appeals Office*, 84 P.3d 1023, 1029 (Colo.2004); *see also Bell v. Indus. Claim Appeals Office*, 93 P.3d 584, 586 (Colo.App.2004) (appellate court reviews de novo the Panel's ultimate legal conclusions). Our de novo review extends to an agency's interpretation of statutes. *See Benuishis v. Indus. Claim Appeals Office*, 195 P.3d 1142, 1145 (Colo.App.2008).

■ We interpret a statute to give effect to the intent of the General Assembly, and to effectuate legislative intent, we first look to the plain and ordinary meaning of the words the General Assembly has chosen to utilize. *See Ortega v. Indus. Claim Appeals Office*, 207 P.3d 895, 898 (Colo.App.2009).

The Colorado Employment Security Act (CESA) is part of a cooperative federal-state program administered under the Federal Unemployment Tax Act (FUTA). *See Indus. Comm'n v. Bd. of Cnty. Comm'rs*, 690 P.2d 839, 845 (Colo.1984). The offset requirements of section 8–73–110(3)(a)(I), C.R.S. 2011, are patterned after and complementary to the analogous provisions of the FUTA. *See Cericalo v. Indus. Claim Appeals Office*, 114 P.3d 100, 102 (Colo.App.2005); *compare* § 8–73–110(3)(a)(I) *with* 26 U.S.C. § 3304(a)(15) (FUTA provisions). This pension offset requirement has been deemed one of a limited number of "fundamental standards" that must be met for a state to receive the benefits of federal certification. *See Watkins v. Cantrell*, 736 F.2d 933, 937 (4th Cir.1984); *see also U.S. Steel Corp. v. Unemployment Comp. Bd. of Review*, 579 Pa. 618, 858 A.2d 91, 98 (2004) (noting that Congress added the provision to FUTA requiring, as a condition of certification, that the state law offset an individual's unemployment benefits by the amount of any public or private pension, or similar periodic retirement payment, received by the individual). The legislative history of the federal act indicates that Congress enacted the retirement benefits offset because it was concerned about "double-dipping" by retirees who had actually withdrawn from the labor force and were being paid both unemployment and retirement benefits by the same employer. *See Redin v. Empire Oldsmobile, Inc.*, 746 P.2d 52, 54 (Colo.App. 1987).

### B. Application

Section 8–73–110(3)(a)(I)(B) provides, in pertinent part, that "an individual's weekly benefit amount shall be reduced (but not below zero) by ... [t]he prorated weekly amount of a pension, retirement or retired pay, or annuity that has been contributed to by a base period employer."

■ The CESA defines "base period" as "the first four of the last five completed calendar quarters immediately preceding the first day of the individual's benefit year." § 8–70–103(2), C.R.S.2011. "Employer" is defined to include "[a]ny employing unit that ... [p]aid wages of one thousand five hundred dollars or more during any calendar quarter in the calendar year or the preceding calendar year." §§ 8–70–103(9), 8–70–113(1)(a)(II)(A), C.R.S.2011. A "base period employer," therefore, is an employer who paid wages during this eligibility period. *See Edwards v. Valdez*, 789 F.2d 1477, 1479 (10th Cir.1986) (a base period employer is an employer who paid wages during the period of time an employee must be employed before he is eligible for unemployment benefits);

*Rivera v. Becerra,* 714 F.2d 887, 891 n. 3 (9th Cir.1983) ("A 'base period employer' is an employer who paid wages on which the claimant's eligibility for unemployment benefits is based.").

■ Therefore, in the context of the CESA, "base period" refers to the period of time prior to the filing of a claim for unemployment benefits that an employee must be paid wages in order to be eligible for unemployment benefits. *See, e.g.,* § 8–73–102, C.R.S.2011 (setting forth method for determining weekly benefit amount for total unemployment using wages earned during "base period"). Accordingly, the phrase "contributed to by a base period employer" in section 8–73–110(3)(a)(I)(B) necessarily refers to the employer's actions, including the payment of wages, during the employee's base period. As such, we conclude that the reference in section 8–73–110(3)(a)(I)(B) to a pension that "has been contributed to by a base period employer" means a pension that has been contributed to by an employer during the employee's base period.

■ Such an interpretation does not conflict with the policy of preventing an employee from "double-dipping." Although employer contributed to the pension claimant is receiving, employer did not contribute to claimant's pension during the base period that is the subject of her present claim for unemployment benefits. Thus, in the circumstances presented here, claimant would not collect both unemployment and retirement benefits based on the same period of work, avoiding any concerns regarding "double-dipping." *See Edwards,* 789 F.2d at 1480 n. 5 ("[t]he term 'double-dipping' ... refers to the collection of both pension benefits and unemployment benefits *based on the same period of work* and contributions by the same employer" (emphasis added)). Additionally, while the statutory language differs, this approach is consistent with the pension offset requirements of the FUTA. *See* 26 U.S.C. § 3304(a)(15).

■ We also note that the CESA is to be liberally construed in favor of claimants to further its remedial and beneficial purposes. *See Denver Symphony Ass'n v. Indus.*

*Comm'n,* 34 Colo.App. 343, 347–48, 526 P.2d 685, 688 (1974). Our interpretation of section 8–73–110(3)(a)(I)(B) is consistent with the intent of the General Assembly to award unemployment benefits to persons who are unemployed through no fault of their own. *See* § 8–70–102, C.R.S.2011; *Denver Post Corp. v. Indus. Comm'n,* 677 P.2d 436, 438 (Colo. App.1984). It also avoids the anomalous result that would occur if the Panel's interpretation were upheld, that is, claimant would have been able to receive unemployment benefits if she had worked for any organization other than employer during this base period. *See* § 2–4–201, C.R.S.2011 (a just and reasonable result is intended by the enactment of statute); *Ingram v. Cooper,* 698 P.2d 1314, 1315 (Colo.1985) (statutes should be interpreted to avoid a construction that defeats legislative intent or leads to an absurd result).

Therefore, we conclude that the Panel erred in determining that claimant was ineligible to receive any unemployment benefits pursuant to section 8–73–110(3)(a)(I)(B) because she was receiving a pension that had been contributed to by her employer prior to her retirement in 2001.

The Panel's order is set aside, and the case is remanded to the Panel with directions to reinstate the hearing officer's decision that no reduction in claimant's unemployment benefits was required under section 8–73–110(3)(a)(I)(B).

Chief Judge DAVIDSON and Judge ROTHENBERG * concur.