2013 CO 52

**INDUSTRIAL CLAIM APPEALS OFFICE, Petitioner**

v.

**COLORADO DEPARTMENT OF LABOR AND EMPLOYMENT and Kathleen A. Hopkins, Respondents.**

**Supreme Court Case No. 12SC49**

Supreme Court of Colorado,
En Banc.

July 1, 2013

Attorneys for Petitioner: John Suthers, Attorney General, Tricia A. Leakey, Assistant Attorney General, Denver, Colorado.

Attorneys for Respondent Kathleen A. Hopkins: University of Denver Student Law Office, Raja Raghunath, Kate Miller, Student Attorney, Kathryn Thomas, Student Attorney, Collin Zundel, Student Attorney, Denver, Colorado.

Justice EID delivered the Opinion of the Court.

¶ 1 Kathleen Hopkins ("Hopkins") worked for the Colorado Department of Labor and Employment (the "Department") for a number of years, and then retired. During her period of employment, the Department made contributions to her retirement fund, and once she retired, she began receiving retirement payments from that fund. Later, she went to work for the Department again. When she was involuntarily separated from her job with the Department during this second period of employment, she applied for and was awarded unemployment benefits. Eventually, Hopkins' unemployment benefits were discontinued and she was issued a notice of overpayment. She appealed the notice and a hearing officer restored her benefits.

¶ 2 The Department appealed, and a panel of the Industrial Claim Appeals Office ("ICAO") reversed the hearing officer's decision. It reasoned that Hopkins was ineligi-

ble to receive unemployment benefits under section 8–73–110(3)(a)(I)(B), C.R.S. (2012) (the "offset provision"), which states that "an individual's weekly benefit amount shall be reduced (but not below zero) by . . . [t]he prorated weekly amount of a pension, retirement or retired pay, or annuity *that has been contributed to by a base period employer.*" (Emphasis added). The ICAO concluded that the offset provision applied because the Department had contributed to her retirement fund during the previous period of employment, and the retirement payments she was receiving from that fund exceeded her weekly unemployment benefit amount.

¶ 3 Hopkins appealed, and the court of appeals reversed. It held that the offset provision applies only when the employer has contributed to the claimant's retirement fund during the base period of employment that made her eligible for unemployment benefits. *See Hopkins v. Indus. Claim Appeals Office & Colo. Dept. of Labor & Emp.*, No. 11CA0239, 310 P.3d 147, 150, 2011 WL 6425616 (Colo.App. Dec. 22, 2011).

¶ 4 We granted certiorari and now reverse. The offset provision of section 8–73–110(3)(a)(I)(B), which applies when a claimant is receiving payments from a retirement fund "that has been contributed to by a base period employer," contains no temporal limitation. Therefore, it applies any time the employer has contributed to the retirement fund from which the claimant is receiving payments, regardless of when the contributions were made. Accordingly, we reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.

## I.

¶ 5 Hopkins worked for the Department from June 1986 until she retired on July 31, 2001. During this time, the Department made contributions to her retirement fund. In August 2001, Hopkins began receiving a monthly retirement distribution of $3,000.00. She began working for the Department again from April 2009 to August 2009. During this time, neither the Department nor Hopkins contributed to a retirement fund for her. After her employment terminated, Hopkins filed a claim for and was awarded unemployment benefits of $443.00 per week. At the time she was also receiving roughly $580.00 per week from her retirement fund. After some time, Hopkins' unemployment benefits were discontinued and she was issued a notice of overpayment. She appealed the notice and a hearing officer found that because the Department had not made payments to Hopkins' retirement fund during the base period of employment, her unemployment benefits could not be reduced under the offset provision.

¶ 6 The Department filed an appeal. Upon review, the ICAO reversed the hearing officer's decision. The ICAO held that Hopkins' unemployment benefits had to be reduced because she was receiving payments from a retirement fund to which the Department had contributed prior to her base period of employment. It noted that the purpose of the offset provision was to avoid "double-dipping" by retirees who are receiving both retirement distributions and unemployment benefits.

¶ 7 Hopkins appealed, and the court of appeals reversed. The court of appeals held that in order for the offset provision to apply, an employer must contribute to an employee's retirement plan during the base period of employment. We granted certiorari[1] and now reverse the judgment of the court of appeals.

## II.

■ ¶ 8 The offset provision of section 8–73–110(3)(a)(I)(B) states that "an individual's weekly benefit amount shall be reduced (but not below zero) by . . . [t]he prorated weekly amount of a pension, retirement or retired pay, or annuity *that has been contributed to by a base period employer.*" (Emphasis added). The court of appeals held that the

---

1. We granted certiorari on the following issue: Whether under section 8–73–110(3)(a)(I), C.R.S. (2012), a claimant's weekly unemployment benefits must be reduced when she is also receiving a pension, retirement or retired pay, or annuity that has been contributed to at any time by a base period employer.

offset provision is limited to cases where the employer has contributed to the retirement fund during the base period of employment. We disagree. Because the offset provision contains no temporal limitation, it applies any time the employer has contributed to the retirement fund from which the claimant is receiving payments, regardless of when the contributions were made.

¶ 9 Statutory interpretation is a question of law that we review de novo. *Clyncke v. Waneka*, 157 P.3d 1072, 1076 (Colo.2007). This case involves the intersection of several statutory definitions. An "employer" is defined as "[a]ny employing unit that ... [p]aid wages of one thousand five hundred dollars or more during any calendar quarter in the calendar year or the preceding calendar year." § 8–70–113(a)(II)(A), C.R.S. (2012). "Base period" is defined as the first four of the last five completed calendar quarters immediately preceding the first day of the individual's benefit year. § 8–70–103(2), C.R.S. (2012). The base period is the period used to determine eligibility for unemployment benefits. § 8–73–102, C.R.S. (2012). A base period employer, then, is an employer that has paid wages to the claimant during the relevant eligibility period. *Rivera v. Becerra*, 714 F.2d 887, 891 n.3 (9th Cir.1983).

¶ 10 In this case, no one disputes that the Department is a base period employer because it paid wages to Hopkins during the relevant period that made her eligible for unemployment benefits. The only question is whether the offset provision is similarly limited only to cases in which the base period employer has made retirement contributions during the relevant period. We conclude that it is not.

¶ 11 Section 8–73–110(3)(a)(I)(B) states that an offset "shall" be made when the claimant is receiving payments from a retirement fund "that has been contributed to by a base period employer." The phrase "that has been contributed to by a base period employer" specifies who has to have made the contributions the base period employer— but not when they had to have been made. Indeed, the phrase does not suggest that the contributions had to have been made during any particular time, just that they had to

have been made at some time in the past. Therefore, in contrast to the definition of employer, which specifically includes a time frame during which the employing unit must pay wages, and in contrast to the definition of base period, which describes the time frame for determining eligibility for benefits, the offset provision contains no temporal limitation.

¶ 12 Hopkins argues that the court of appeals correctly interpreted the phrase "contributed to by a base period employer" to "necessarily refe[r] to the employer's actions during the employee's base period," including pension contributions. *Hopkins*, 310 P.3d at 150, No. 11CA0239. But this interpretation is contrary to the language of the statute. Under this interpretation, the statute would have been written as applying to "any pension contributed to by the base period employer during the base period." But, as noted above, there is no such temporal limitation contained in the offset provision. The phrase "base period employer" simply identifies which employer contributed to the retirement fund (that is, the one that paid wages to the claimant during the relevant eligibility period); it does not import a temporal limitation into the offset provision.

¶ 13 Hopkins also argues that the court of appeals was correct to suggest that the federal counterpart to the offset provision supports finding a temporal limitation in the Colorado offset provision, section 8–73–110(3)(a)(I)(B). Hopkins notes that Colorado's offset provision is patterned after the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. § 3304(a)-(d) (2012), and that, because FUTA does not require unemployment benefits to be offset unless the retirement contributions were made during the base period, the Colorado offset provision should be read in a similar fashion. While it is true that the offset provision is "patterned after and [is] complementary" to FUTA, *see Cericalo v. ICAO*, 114 P.3d 100, 102 (Colo.App. 2005), FUTA contains additional language in its offset provision that expressly limits the offset to instances in which retirement contributions have been made during the base period. 26 U.S.C. § 3304(a)(15) (limiting offset to instances in which contributions were

made "after the beginning of the base period"). Because the Colorado offset provision does not contain similar limiting language, we decline to interpret it as if it did.

¶ 14 The court of appeals also determined that the interpretation we adopt today leads to the "anomalous result" in which Hopkins, had she worked for another employer, would not have been subject to the offset provision. *Hopkins,* 310 P.3d at 150, No. 11CA0239. But there is no anomaly here. The offset provision was meant to prevent "double-dipping" by retirees who had withdrawn from the work force and were receiving unemployment benefits and pension benefits from the same employer. *Redin v. Empire Oldsmobile, Inc.,* 746 P.2d 52, 54 (Colo.App.1987). Had Hopkins worked for another employer during the base period, there would have been no "double-dipping" problem to be addressed, as the base period employer paying unemployment benefits would be different from the entity paying the retirement benefit.

¶ 15 Finally, Hopkins, echoing the court of appeals, contends that her interpretation should prevail in order to effectuate the General Assembly's stated intent to award unemployment benefits to claimants who are unemployed through no fault of their own. *Hopkins,* 310 P.3d at 150, No. 11CA0239. Yet the offset provision plainly expresses the legislature's intent that those benefits be offset when the base period employer has contributed to the claimant's retirement fund. Because the offset provision contains no temporal limitation, we decline Hopkins' invitation to read one into the statute.

## III.

¶ 16 For these reasons, we reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.